Hall vs. The State.

Joseph J. Hall, plaintiff in error, vs. The State of Georgia, defendant in error.

On the trial of H., charged with stealing a steer, the property of one K., it being in proof that H. did own a steer having the same flesh marks as the one claimed to have been stolen, except as to the brand, which could not be seen at the time of the taking, but was subsequently discovered. H. promptly went to K. and said that if the steer was his, he, H. had made a mistake, and then paid him the amount he received for the steer: *Held*, that what H. then said and did, was admissible as evidence for the defendant; of the effect of which, the jury were to judge.

Indictment for Simple Larceny, and Motion for New Trial. Decided by Judge Richard H. Clark. In Decatur Superior Court. April Term 1864.

Hall, the plaintiff in error, was tried for stealing a steer, the property of James Kent. *Kent* testified that he was the owner of a small white steer, two years old, poorly grown, with red specks about the neck, both ears off, and branded with the letter K; and that in 1862, between the spring and fall, he missed it, and had never seen it since. *Harrell* testified that in Decatur county, in September 1862, Hall delivered to him, to take to Columbus for sale, a small white steer with red specks about the neck and both ears off; that no brand could be seen on account of the length of the hair, but afterwards, when the animal began to shed, witness discovered a very indistinct brand which he took to be the letter K, but could not be certain of it. Witness took the steer to Columbus in a drove, sold it for fifteen dollars, and paid over the money to Hall.

This was the evidence on the part of the State.

The evidence for the accused was as follows: *Jones* testified that he knew a steer belonging to Hall—a small white steer, poorly grown, with red specks about the head and neck, and (when he first saw it, which he thought was in the spring of 1862,) marked with Hall's mark and branded with his brand —which was J O; that it staid about witnesse's premises five or six months and then disappeared. After a month or two, he saw it again, or one he took to be the same, and both ears were off. He saw it no more, nor any steer of like

description. The cattle of Kent and those of Hall ran in the same range; witness knew them, but did not know *two* steers of the foregoing description in that range. Kent and Hall's brands were in letters like J O and K. When the hair of a cow is long, it is impossible to tell what the brand is. *Miss Hall*, a daughter of the accused, testified that her father had a white steer, with red specks about the head and neck, and both ears bitten off. She last saw him, she thought, just before Christmas of 1861. His ears were then off. *Humphries* testified that he saw the steer that was placed by Hall in the hands of Harrell, a white steer, with red specks about the neck, and both ears off; that witness saw no brand on him, and did not think any could have been seen. He helped to "swim" the cattle.

The foregoing evidence being all before the jury, counsel for Hall offered to prove by *Kent*, that immediately after the fact was ascertained that the steer sent off with Harrell, was probably branded with a K, or was the property of Kent, Hall came to him and said if it was Kent's, he had made a mistake, and proposed, and did actually pay him the amount of money for which the steer was sold. This evidence the Court rejected; and the jury returned a verdict of guilty.

Hall then moved for a new trial, because the Court erred in rejecting the evidence offered, and because the verdict of the Jury was contrary to law, to the evidence, and to the charge of the Court. The Court overruled the motion, and this is the error now complained of.

LAW & SIMS, for plaintiff in error.

STROZIER, for defendant.

LYON, J.

Ought the Court below to have granted a new trial? We think it ought. The rejection of the testimony of Kent, offered by defendant, "that immediately after the fact was

ascertained that the steer sent off with Harrell was proba-
bly branded with a K, or was the property of Kent, Hall
came to him and said if it was Kent's, he had made a mis-
take, and proposed, and did actually pay him the amount
of money for which the steer sold," was clearly erroneous,
and a new trial ought to have been granted on account of
its rejection.

The theory of defendant's defence was, that if it was true
that the steer he had sent off and sold as his own, was, in
fact, Kent's, and not his, he did so by mistake, believ-
ing it to be his own, and not with any intent to steal; and in
support of this idea, he proved by Mr. Jones that he did
have a small white steer, with red specks on the neck, in
Hall's mark and brand, that stayed about the premises of
witness some two months and then disappeared, and that he
saw the same steer in about one month afterwards, with both
ears off; or one that he took to be the same steer. Miss Hall
swore that her father did have a white steer, with red specks
about his neck, and both ears bitten off. Humphries testified
that he saw the steer when it was delivered by Hall to Har-
rell, and that he could see no brand, and believed none
could be seen. Harrell, who carried off and sold for Hall,
could see no brand when the animal was delivered, but sub-
sequently, after shedding its hair, he discovered a very in-
distinct brand, which he took to be the letter K. All this
evidence, if true—and of that we can know nothing—goes
far, very far, to establish, if the steer did in fact belong
to Kent, and not to Hall, a want of intent to steal, but that
the taking was such a mistake as the very best of men might
make. So strongly does the evidence so impress us, that we
think we should have granted a new trial on the ground
that the verdict was against the evidence, if we were not
compelled to grant the motion for error in the rejection of
the proposed testimony of Kent.

What the objection is, or was, to this testimony, we cannot
see. It was precisely what the balance of the defendant's
evidence indicated. Hall did not follow the steer to market;

when it left him, no brand was; visible and its appearance and marks, in every other respect, answered to his own. Subsequently, the brand makes its appearance that, alone, identifies the animal as the property of Kent. When the person having the steer in charge reports this fact to Hall, he promptly repairs to Kent, states the fact, and says if it is true, he made a mistake in sending him off, and pays to him the money that he otherwise would have received himself—just what any honest man would have done under similar circumstances, and precisely what, if he had not done, would have been justly used against him as the strongest evidence of an intent to steal the steer, then why should he not have the benefit of the fact? We can see no reason for its exclusion. If he made a mistake, and honestly corrected it, he is not guilty of stealing. If, on the contrary, he knew the steer was not his, and he made this statement and offer when his crime was discovered, for the purpose of avoiding the effect, it amounts to nothing; but of all this the jury must judge, and they can only do so, correctly, by hearing all the facts.