## MITCHELL *v.* THE STATE.

The evidence in this case being entirely circumstantial, and insufficient to show beyond a reasonable doubt, and to the exclusion of every other rational hypothesis, that any larceny at all was actually committed, and the inculpatory evidence tending to raise a suspicion against the accused having been satisfactorily explained, and it also appearing that he was a man of good character, the evidence as a whole did not warrant the conviction and a new trial should be had.

Argued October 15, — Decided November 15, 1897.

Indictment for larceny from the person. Before Judge Ross. City court of Macon. August 28, 1897.

It appears from the evidence, that J. H. Leonard went from his home in Eatonton to Macon upon an excursion, and after reaching Macon began drinking and soon became so drunk that he remembered nothing that transpired during his intoxication, and when he came to himself he was in custody in the police station. He then discovered that his watch and chain were missing from his person, but found in his pocket nearly half of the money he had when he started from Eatonton. While he was drunk upon the street some one assisted him into a hack, and drove with him to a hotel known as the Zettler House, at which defendant was employed as a porter. Defendant came out, and was asked by the person accompanying Leonard to procure lodging for him. Defendant attempted to do so, but the landlady refused to receive Leonard. Defendant returned to the hack and told the hackman he would carry Leonard to his (defendant's) house. Before driving away Leonard told the unknown man who had accompanied him in the hack to go to hell, and the man left. The hack-driver testified that these were the only words he heard Leonard speak during the whole time. The hack was then driven to defendant's house, and he and the hackman assisted Leonard out of the hack into the house, and the hackman left. According to defendant's statement, this part of which is not contradicted, after the landlady refused to receive Leonard at the hotel, the man accompanying him handed defendant a dime and said, "Do something for him, or they will get him sure. Can't you take him somewhere?" The man then

2

said something to Leonard, who answered, "You go to hell." Then the other man walked off. Defendant then took Leonard to his house, and Leonard gave him fifty cents and told him to get some whisky with it. He also said, once or twice, "Don't let them get me; keep me away from them." He handed his watch and chain to defendant and asked him to take care of them. Defendant said, "Well, I will put it here in the trunk"; and did put it there. He then handed Leonard a chair, who sat down in it, and defendant left him in the house, without locking the door, and went to the hotel. An hour or two later he returned to the house and found that Leonard had gone. From the testimony of the two policemen it appears, that after Leonard became sober at the police barracks he called on them for his watch, thinking they had taken charge of it. He had no watch when they arrested him, and they so told him. The two policemen then, after some investigation, arrested defendant at the Zettler House, on suspicion that he had the watch. They asked him if he did not carry a drunken man from that house up the alley the day before, and he denied it and said he did not leave the Zettler House at all on the previous afternoon. He also said he did not know the number of the hack nor the name of the hackman with whom the drunken man was riding. The policeman then said, "George, we have the dead proof on you; we know it all, and you might as well own up to everything." Defendant asked, "Is anything missed?" or "What is wanted?" and one of the policemen answered, "That man's watch." Defendant then said, "O yes, the watch is in my trunk at my house; he gave it to me to put away for him. Here is the key to the house." They went to the house and found the watch and chain in the trunk in a corner of the bottom under the tray, not covered up. The door was locked but the trunk was not. Defendant said nothing about having tried to procure lodging at the Zettler House for the drunken man on the previous day. In his statement defendant says, that when he was arrested by the policemen they did not at first tell him what they arrested him for, and when they were asking him about going with a drunken man, and who the

hackman was, etc., he told them he did not know, and did not go with one, thinking they were still after Leonard whom he had promised to help. He did not know what Leonard had done nor where he was. Just as soon as they said they wanted Leonard's watch and chain, defendant told them all about it and gave them the key. He did not know the hackman. There was testimony that defendant's character is good, and that he is honest, faithful and accommodating. Defendant also stated to the jury, that as soon as he got off from work on the night following the day when the transaction described took place, he went all over town and looked in a great many places for Leonard ; knew his face but did not know his name ; and on the next morning told Minton all about it. One of the two policemen testified that he was present at the commitment trial of the defendant, and to the best of his recollection defendant did not say anything about looking for the man Tuesday night, nor anything about the watch, nor that defendant told Minton that the man handed defendant his watch to take care of ; and that defendant was represented at the commitment trial by the same counsel as on the present trial.

*Estes & Jones* and *Nottingham & Lundy*, for plaintiff in error. *Robert Hodges, solicitor-general,* contra.

COBB, J. George Mitchell was arraigned in the city court of Macon, upon an accusation charging him with the offense of larceny from the person. He was tried by the judge without a jury, and upon being convicted, made a motion for a new trial, which was overruled, and he excepted. The evidence is set forth in substance in the official report. From an examination of this evidence it will appear that it was entirely circumstantial in its character, and, taken as a whole, was insufficient to show beyond a reasonable doubt, and to the exclusion of every other rational hypothesis, that any larceny at all was actually committed. The evidence which tended to raise a suspicion against the accused consisted of that part which showed that he had an opportunity to commit the offense, and that he had made a false statement in regard to his having had that opportunity. In his favor it appeared that he had,

before his arrest and before he knew that any charge was made against him, made a statement in which he admitted having in his possession the property alleged to have been stolen, and also gave an account of the manner in which he acquired such possession, which if true was consistent with innocence.   In his statement to the court he gave what appears to us to be an entirely satisfactory explanation of his false statements in regard to his opportunity to commit the offense.   The evidence shows that the accused was a porter at a boarding-house in the city of Macon; according to the testimony he was a man of good character, honest, faithful and accommodating; and while he had occasion in the course of his employment to handle considerable sums of money and had access to the house and valuables contained in it, there never had been any cause to suspect him of dishonesty.   Other circumstances in his favor were, that his house which contained the property alleged to have been stolen and the trunk in which it was placed were both unlocked, and that no attempt had been made to secrete the property.   It also appears that the person upon whom the larceny was alleged to have been committed was alone with the accused in the latter's house, in a drunken stupor, and that notwithstanding the accused had as good an opportunity to extract the contents of his pocket-book, and other valuables about his person, nothing except the watch, which was the article alleged to have been stolen, was missed.

The evidence for the State is barely sufficient to make even a prima facie case of larceny; and when the circumstances relied on for a conviction are viewed in the light of the statement on the trial and the evidence showing the good character of the accused, that the conviction is unsupported by the evidence would seem to be apparent.   This case is an illustration of how valuable a good character is to an individual.   The good character of the accused in this case is sufficient to raise a reasonable doubt as to whether any offense at all has been committed.   Even if the evidence for the State is sufficient, standing alone, to make out a prima facie case against the accused by showing recent possession on his part of the property, his good character is sufficient to overcome the presumption arising from

such possession. The statement of the accused and the evidence introduced in his behalf satisfactorily and completely explained the inculpatory evidence which was relied on by the State for conviction; and our conclusion is that the evidence for the State, in the light of the testimony introduced in behalf of the accused, was insufficient to establish, either that a crime had been committed, or that the accused was the perpetrator. Bailey *v.* State, 52 Ind. 462.

*Judgment reversed. All the Justices concurring.*