### 1526. MUSGROVE v. THE STATE.

1. The evidence showing that the defendant took the notes in question (which had been placed, at his instance, in the hands of the prosecutor, for collection) under a fair claim of right, and the testimony being insufficient to establish that the taking of the notes was with intent to steal, the conviction of the defendant was unwarranted. In larceny the animus furandi must be not only alleged, but proved.

2. In the absence of an instruction that the taking of property under a fair claim of right is not larceny, it is error to instruct the jury that "the law presumes that every act which is in itself illegal was criminally intended, until the contrary is made to appear." While the law does presume, prima facie, that a criminal act is criminally intended, still, in a case of larceny, where the defendant relies, not upon a denial of the taking, but upon proof that there was no intent to steal, the charge above quoted, unaccompanied by any instruction as to the publicity of the taking, or as to the necessity that the animus furandi be proved, prejudices the defendant's case—if it does not eliminate his defense— by impressing upon the jury that mere proof of the taking would be sufficient to authorize conviction.

3. The practice of recharging the jury upon some particular point, in the absence of any request from the jury for instructions, should be very cautiously indulged, except where there has been a failure in the first

instance to properly call the attention of the jury to some principle of law applicable to the issues involved.

Accusation of larceny from house, from city court of Newton—Judge Johnson. November 3, 1908.

Submitted January 14,—Decided January 27, 1909.

*W. I. Geer,* for plaintiff in error.

*Benton Odom, solicitor,* contra.

RUSSELL, J. The defendant was accused of the offense of larceny from the house, and upon his trial was convicted. It appears that he had quite a number of notes and mortgages, which he was endeavoring to collect, and that he had made a contract with the prosecutor, Mr. Cotton, who was a bailiff, to collect them for him upon ten per cent. commission. It further appears, that though some of the papers had been collected, Mr. Musgrove, the defendant, had remonstrated with the prosecutor for his lack of diligence as to the others and threatened to rule him for failing to make collections. They were first cousins by marriage, and had been "old friends." One Sunday afternoon, while the prosecutor was absent from home, the defendant went to the prosecutor's house, went into his coat pocket, and took out three or four of his own notes, which had been placed in the prosecutor's hands for collection. The notes were not taken secretly. The prosecutor's mother-in-law, two sons, and one Hudgess were present, and saw the defendant take the notes after having stated to the prosecutor's mother-in-law that the notes were what he wanted, so that he could collect them. He first asked the prosecutor's mother-in-law if she knew where they were, and upon her telling him that she knew nothing of them, he looked for the notes in her presence, made no effort to hide them after he got them, and, after getting them and putting them into his pocket, stayed there until the prosecutor came home, and then told him that he had gotten them. As to these points there is no dispute in the testimony. The prosecutor testified that Musgrove did not tell him that he had taken the notes, until he (the prosecutor) had made search for them and asked for them. He also testified that the notes were mortgage notes and had been foreclosed, and, after having been foreclosed, had been placed in his hands by one Raburn (presumably the justice of the peace). There is no evidence in the record, however, that there had been any foreclosure. The prosecutor, in one part

of his testimony, stated that the defendant did not give the notes to him, but in another portion admitted that the defendant allowed him ten per cent. on what he collected.

From the above summary of the evidence, we are satisfied that the conviction of the defendant was unauthorized, because the evidence is wholly insufficient to show that the notes were taken by the defendant with the intention to steal. Of course, as the jury were told by the court, the possession of the notes by the prosecutor for the purpose of collecting them would give him such a title as would justify him in prosecuting any one who wrongfully interfered with that possession; in other words, any one who might have taken the notes in question from the prosecutor without any claim of right would have been guilty of larceny; but the instructions of the court wholly ignored the principle that one who takes property under a bona-fide claim of right can not be guilty of larceny, because there is no intent to steal. We are not called upon to decide whether or not one is guilty of larceny who takes from an officer the papers connected with a foreclosure entered by a court, which have been entrusted to the officer for the purpose of making a levy and return; for the record fails to show that the mortgage notes alleged to have been stolen in this case had in fact been foreclosed. The prosecutor states that some of them had been foreclosed, but his mere opinion that they had been foreclosed can not supply the proper proof upon that point. There is no dispute in this case that the defendant took the notes publicly, and that his sole purpose in taking them was to get them back from one who he claimed was not using the proper diligence in collecting them; and it is significant that there was no prosecution of the defendant until after the defendant had ruled the prosecutor and had finally (after the lapse of more than a year) had judgment awarded in his favor. As remarked by Chief Justice Bleckley in *Causey* v. *State*, 79 *Ga.* 566 (5 S. E. 122, 11 Am. St. R. 447), "the authorities are abundant that when one takes property under a fair claim of right, it is not larceny; and the publicity of the taking is very powerful evidence to establish the bona fides of the claim of right." The statement of the defendant to the prosecutor's mother-in-law at the time of the taking—as was said by Judge Bleckley as to Causey—was a proclamation that he was about to resume his former possession of his own notes.

In the absence of proper evidence that these notes had become court papers, and the prosecutor admitting that there was an outstanding agreement by which he, although a bailiff, was also the agent of the defendant, and was to receive a commission of ten per cent. from the defendant upon the amounts collected, what evidence is there that the notes were taken with intent to steal? We see none; and as an indictment for larceny which fails to allege that the taking was done with intent to steal would be fatally defective, so it is equally true that a conviction of larceny is wholly unauthorized in the absence of evidence showing beyond a reasonable doubt that the property alleged to have been stolen was taken with intent to steal. Without multiplying authorities, we merely cite 1 Hale's P. C. 509; 2 Russ. Cr. 163; 2 Arch. Cr. Pl. & Pr. 1183; 1 Whar. Cr. L. 884; 1 Bish. Cr. L. §884, 297; 2 Id. §851; *Hall* v. *State,* 34 *Ga.* 208; *Daniel* v. *State,* 55 *Ga.* 223; *Causey* v. *State,* supra; *Cleveland* v. *State,* 114 *Ga.* 111 (39 S. E. 941) ; *Lee* v. *State,* 102 *Ga.* 224 (29 S. E. 264), and citations; *James* v. *State,* 114 *Ga.* 96 (39 S. E. 946) ; *Jackson* v. *State,* 116 *Ga.* 578 (42 S. E. 750) ; *Mitchell* v. *State,* 103 *Ga.* 17 (29 S. E. 435). In *Patterson* v. *State,* 85 *Ga.* 134 (11 S. E. 620, 21 Am. St. R. 152), the Supreme Court, quoting approvingly from Roberts v. People, 19 Mich. 401, and Maher v. People, 10 Mich. 210 (81 Am. D. 781), says that "the general rule is well settled, to which there are few, if any, exceptions, that when a statute makes an offense to consist of an act combined with a particular intent, that intent is just as necessary to be proved as the act itself, and must be found by the jury, as a matter of fact, before a conviction can be had." In the *Patterson* case are numerous citations from almost every court of last resort in the Union which are cited in support of this proposition.

2. After the jury had been deliberating upon the case for some time, the court recalled them, and, after having asked them if they could agree, and upon being informed by them that they could not agree, gave them an additional instruction. The instruction was that "human intent can be only ascertained by acts and conduct; and the law presumes that every act which is in itself illegal was criminally intended, until the contrary is made to appear." We think that under the particular facts of the case this instruction, disconnected as it was and unexplained by any other reference

to the facts of the case, or other principles of law which were necessarily involved in it, was error, and necessarily injurious to the defendant on trial. The language used by the judge is a quotation from *Lawrence* v. *State*, 68 *Ga.* 289, and therefore may be assumed to be abstractly correct. The judge, however, did not recharge the jury in full, but focussed their attention upon merely one contention of the State, and, by reading this quotation, emphasized the State's contention and virtually eliminated the sole defense. The defendant did not deny the taking of the notes, but claimed that they were his own and that he had a right to take them. The instruction of the judge, without more in explanation thereof, assumed that the taking of the notes was unlawful. The jury were no doubt impressed with this phase of the case, because, while they had, prior to this instruction, stated that there was no chance to agree, they seemed thereafter to have no difficulty in finding the verdict of guilty. Under the facts disclosed by the record, it was error to give the jury the principle announced in the *Lawrence* case without also instructing them that the taking of property under a fair claim of right is not larceny, and that the publicity of the taking is to be considered, in determining whether the claim of right is bona fide.

3. The practice of recharging the jury upon some particular point in issue in the case, where no request for instruction upon that point is made by them, should be most cautiously indulged, and can rarely be approved where the principle to which the attention of the jury is thus specially directed has already been presented in the original charge of the court. The natural tendency of calling the attention of the jury specially to a certain legal principle upon which the case of one of the parties may especially depend is to magnify in the eyes of the jury any evidence adduced which is pertinent to that particular principle, and to stress the contention of one party, who may have relied upon it, to the manifest injury of the opposite party. Of course, what is now said has no application to those instances where the judge, by oversight, may have omitted in the first instance to instruct the jury upon some principle pertinent to the issues, or where upon reflection, he becomes convinced that his prior instructions upon any point were erroneous; in which event he should recall the jury and explain and retract the error.  *Judgment reversed.*