## 5092.  TAYLOR *v.* THE STATE.

1. "Evidence of good character is not admitted as a mere makeweight, but as evidence of a positive fact, and may of itself, by the creation of a reasonable doubt, produce an acquittal." *Seymour* v. *State*, 102 *Ga.* 805. It was therefore error, in instructing the jury upon the weight to be given to evidence touching the good character of the accused, to charge them in effect that it is only in connection with other evidence that such evidence may, by the creation of a reasonable doubt, produce an acquittal.

2. While, of course, mere proof of the good character of the accused will not avail as a defense when the jury are satisfied by the evidence, beyond all reasonable doubt, of the guilt of the accused, still such proof of good character may of itself annihilate an apparently plain case of guilt by discrediting and impeaching the testimony upon which the conclusion of guilt is necessarily based.

3. The instructions of the trial judge, other than those relating to the consideration of the testimony as to the defendant's good character, were free from error; but since the verdict rendered, of guilty of shooting at another, was not demanded, and there was testimony supporting the defendant's statement at the trial, which might have justified him, the error in the instructions to which we have referred must be adjudged to have been prejudicial, and a new trial should have been granted.

DECIDED OCTOBER 29, 1913.

Indictment for assault with intent to murder; from Bibb superior court—Judge Mathews. June 28, 1913.

*John R. Cooper,* for plaintiff in error.

*John P. Ross, solicitor-general,* contra.

RUSSELL, J. The defendant was indicted for the offense of assault with intent to murder, and was convicted of the statutory offense of shooting at another, and he excepts to the judgment overruling his motion for a new trial. There are numerous assignments of error in the motion for a new trial. We have given consideration to each of them, and have carefully examined the record with reference to all of those assignments whose validity depended upon an examination of the record. All of the requests to charge which were refused and which contained correct and pertinent instructions appear to have been well covered in the charge of the court. The refusal to give some of the requested instructions which were pertinent and legal but which related to the offense of assault with intent to murder affords no just grounds of complaint, because the defendant was convicted only of the lesser offense of shooting at another, and manifestly the court's omission to give these instructions was not harmful to him. Several of the requests for instructions did not correctly state the law. We shall not discuss some of the assignments of error (such as the exception to the court's refusal to continue the case), for the reason that they relate to points not likely to recur upon another trial; and some of them (including some of the assignments of error upon rulings on the evidence) will not be dealt with, for the reason that the questions sought to be raised were not properly presented.

One of the assignments of error related to the refusal of a request to charge the jury as follows: "The defendant has two defenses in this case,—one of self-defense, and the other to prevent an illegal arrest. If the defendant shot in order to save his own life, you could not convict him of any offense. If you believe that the defendant shot in order to resist an illegal arrest, or an attempted illegal arrest, then and in that event you could not convict him of assault with intent to murder." If an arrest was attempted by the prosecuting witness, the fact appears only from the defendant's statement, and therefore, in the absence of a request (as has been often ruled), the court was not required to give instructions upon the subject; but an instruction embodying the principle relating to resistance to an

illegal arrest, or an illegal attempt to arrest, would be required on request. The failure of the judge to give an instruction on this point was harmless, however, since the accused was not found guilty of assault with intent to murder; but upon the next trial, if requested to do so, the court should charge the jury that if they believe from the evidence, or from the statement of the accused, that the prosecuting witness was attempting illegally to arrest him, he would have the right to resist and use whatever force was necessary to prevent an illegal arrest, and that if, in resistance of illegal arrest, he used no more force than was necessary for that purpose, he would be justified.

According to the evidence for the State, the accused shot one Moffett (who was a gatekeeper at a railroad depot in Macon, Georgia) without any present provocation; and a verdict finding him guilty of assault with intent to murder would have been fully authorized by this testimony. According to his statement to the jury, Moffett attempted to strike him with a "billy," such as is ordinarily used by the police, which, according to the testimony, was a weapon likely to produce death, and he shot only to prevent Moffett's blows. There was also testimony in support of the defendant's statement, at least to the extent that Moffett had the bludgeon in his hands and attempted to strike him before he fired, though Moffett asserted that Moffett's official club was hanging up in the depot at the time of the encounter. It is insisted that under this state of the case the defendant should either have been convicted of assault with intent to murder, or acquitted, for the reason that there is no middle ground upon which a finding of a verdict for shooting at another can rest. We think there is nothing in this contention, however, because the jury was fully authorized, from the evidence as a whole, to find that the accused was not justified, and yet to find that his assault upon Moffett, instead of being due to a deliberate intention to kill, was the result of uncontrollable passion aroused by a previous assault or indignity inflicted upon him about fifteen minutes before the shooting, when Moffett, as caretaker of the building, ejected him from the waiting-room. The evidence is in dispute as to the degree of force used by Moffett in removing him from the waiting-room, but it is uncontradicted that he was removed from the waiting-room by Moffett a very few minutes before the shooting, and that they had some words in regard to

the matter. It was only a very few minutes from the time that he was put out of the waiting-room until he returned to the depot and the shooting took place; and if the jury, though satisfied of his guilt of some offense, had doubt as to whether he was guilty of assault with intent to murder, or of shooting at another, they did nothing more than their duty if they gave him the benefit of the doubt and found him guilty of the lesser offense. Viewing the evidence as a whole, we are very clearly of the opinion that the law of voluntary manslaughter was involved in the case, and that the instructions of the court upon this subject were both necessary and proper.

The verdict could very well be allowed to stand but for the fact that the judge erred in his instructions to the jury as to the weight and effect of the testimony which had been submitted touching the good character of the accused. We would not order a new trial if the error in this respect had been immaterial; nor would we feel obliged to grant a new trial if the defense of the accused rested wholly upon his statement to the jury, but the testimony that the shooting of the prosecuting witness was unprovoked is contradicted, and the error in the instruction is a vital one, affecting the whole scope of the testimony as to the good character of the defendant. Upon the subject of good character the court charged as follows: "Now, in this case the defendant has put in evidence his good character. Good character in itself is no defense, no complete defense, but proof of good character is a matter for the jury to consider in connection with all the evidence in the case, and it is entitled to have such weight as the jury think it ought to have as bearing upon the question of the guilt or the innocence of the accused; it may be considered and should be considered and given such weight as you think it entitled to have for that purpose. If the consideration of the other evidence, taken in connection with the proof of good character, should develop a reasonable doubt, or if in that consideration a reasonable doubt arises as to the guilt of the defendant, it would be the duty of the jury to give the defendant the benefit of that doubt and acquit him." It can not be said that the last sentence of this instruction is in itself erroneous, but we think that the court, in addition to what is there said, should have distinctly told the jury that proof of good character may be sufficient alone and of itself to raise in the minds of the jury such a

reasonable doubt as to the defendant's guilt as to authorize his acquittal, or may be sufficient to authorize the jury to discredit entirely testimony which if credited would require the conviction of the accused. And for this reason it was clearly error for the judge to tell the jury that good character in itself is no defense; and the modification to the effect that it was "no complete defense," without explaining that sentence, as suggested above, was likely to confuse the jury.

There was a time when the law was as stated by the trial judge, and when proof of good character could only be considered in connection with the other evidence in the case to enable the jury to say whether, when considered in connection with the other evidence and upon the case as a whole, the proof of good character generated a reasonable doubt of the defendant's guilt. There are a number of cases apparently to the effect that good character as a defense is only available in doubtful cases, and is of no value where the evidence is clear. *Thomas* v. *State*, 59 *Ga.* 784; *Coxwell* v. *State*, 66 *Ga.* 309; *Epps* v. *State*, 19 *Ga.* 102; *Jackson* v. *State*, 76 *Ga.* 551. According to the later rulings of the Supreme Court, however, in which the prior rulings of the court were expressly referred to and construed, formal evidence of good character, when offered by the defendant in a criminal case, should be considered by the jury not merely where the other testimony in the case makes it doubtful whether the defendant is guilty or not, but where such evidence of good character may of itself generate a doubt as to the defendant's guilt. *Shropshire* v. *State*, 81 *Ga.* 591 (8 S. E. 450); *Redd* v. *State*, 99 *Ga.* 210 (25 S. E. 268); *Seymour* v. *State*, 102 *Ga.* 804 (30 S. E. 263). In the latter case Chief Justice Simmons, delivering the opinion of the court, says: "Evidence of good character is not admitted as a mere makeweight, but as evidence of a positive fact, and may of itself, by the creation of a reasonable doubt, produce an acquittal." And in *Mitchell* v. *State*, 103 *Ga.* 17 (29 S. E. 435), Justice Cobb, delivering the opinion of the court, held that proof of the defendant's good character was sufficient of itself to authorize an acquittal and to rebut the presumption arising, in a case of larceny, upon proof of the defendant's recent possession of property alleged to have been stolen. As was said in the *Shropshire* case, of course if the guilt of the defendant is plainly proved to the satisfaction of the jury, beyond a reasonable doubt,

it would be their duty to convict notwithstanding proof of good character, and in that event the proof of good character would be of no avail. Such a case would merely be one in which the jury might believe that the defendant had a good character and yet be fully convinced of his guilt of the crime with which he was charged. The *Seymour* case and the *Mitchell* case are both instances in which it was held that proof of good character might effect more than the mere creation of such a reasonable doubt as would authorize acquittal. They establish the proposition that proof of good character as a substantive fact may in some cases provide an absolute defense to the accused by going further than merely raising a reasonable doubt, in that it may actually disprove the charge by discrediting the witness upon whose testimony the charge rests. We have no doubt that the learned and eminently fair judge who tried this case, in using the language that "good character in itself is no defense," or at least, not a complete defense, had in mind the proposition that proof of good character is not available as a defense if the jury is satisfied beyond a reasonable doubt, from the evidence in the case, that the defendant is guilty; but the language actually used did not appropriately convey that meaning to the jury. Personally we are reluctant to grant a new trial upon this ground, for we are not certain that in the case at bar the error in the instructions prejudiced the defendant. Personally we are inclined to the opinion that the accused, smarting under his ejection from the waiting-room, flew into a rage, and in passion, but without malice, shot the gatekeeper, and that therefore the case is a typical case of "shooting at another." But no one can know what would have been the effect of a consideration of the proof of good character, under proper instructions, especially since the jury, even if they did not justify the defendant, were not compelled to find him guilty of shooting at another, but might have found him guilty of the lesser offense of assault.

Since, in our judgment, there should be another trial of the case, it is perhaps proper for us to say that if the judge in his charge to the jury on that trial should refer to the subject of "cooling time," they should be told that "cooling time" is a question solely for the jury; and if an appropriate request upon the subject is timely presented, the jury should be instructed upon the theory of the defense which rests upon the defendant's statement, to the effect that

he made his attack upon the prosecutor in resistance to an attempted illegal arrest. For if the defendant, in resistance of an attempt to arrest him illegally, did not exceed the measure of force necessary for that purpose, he would not be guilty of any offense; and even if he did use unnecessary force in resistance of illegal arrest, it would not necessarily follow that he would be guilty of shooting at another, for under some circumstances the jury might be authorized to find such a one merely guilty of assault.

It is apparent that the defendant waived the incompetency of the juror Broadway, if he was incompetent, by accepting him as a juror before his strikes were exhausted.

As to the ruling of the court upon the competency of stockholders in railroad companies having the depot building in charge, and their relatives, to serve as jurors in this case, there is no ground for complaint. The objection of counsel for the defendant was made en bloc to all jurors who might be stockholders or employees of the Central of Georgia Railway Company and other railroads using the depot, and was properly overruled. Even if it be true, as was insisted by counsel, that the Central of Georgia Railway Company was the real prosecutor, or behind the prosecution of the case, the court would have been compelled to act merely upon supposition to reach this conclusion from the fact that the person who was assaulted happened, at the time of the assault, to be the gatekeeper of the depot. The examination of jurors upon their voir dire, prima facie, exhausts the right of the defendant of inquiring into the competency of the jurors. If either the State's counsel or the accused wishes to test further the bias or prejudice of the juror, he must first put the jurors upon the judge as a trior, and then proceed to prove some fact tending to establish that his answers upon the voir dire are not true. The effort in this case fell far short of the legal requirements. The motion to purge the jury was properly overruled, because there was no evidence that the Central of Georgia Railway Company or any other railroad company using the depot was participating in the prosecution. Even if this had appeared, we are not prepared to hold that every employee or stockholder of one of these railroads would be disqualified to serve as a juror. It would take more than the mere fact of pecuniary interest in the corporation to disqualify a stockholder in this case, and an employee would not have even that interest.

*Judgment reversed.*