MOYERS *v.* THE STATE.

No. 12166. JUNE 25, 1938.

*George G. Finch* and *Graham Wright,* for plaintiff in error.

*John A. Boykin,* solicitor-general, *J. W. LeCraw,* and *James A. Branch,* contra.

*Bond Almand, Marion Smith,* and *Arthur G. Powell,* as amici curiæ.

GRAHAM, Judge. The first and second questions are answered in the negative. The offense of robbery as defined by the Code, § 26-2501: "Robbery is the wrongful, fraudulent, and violent taking of money, goods, or chattels from the person of another by force or intimidation, without the consent of the owner, or the sudden snatching, taking, or carrying away any money, goods, chattels, or anything of value from the owner or person in possession or control thereof, without the consent of the owner or person in possession or control thereof." Although this definition does not expressly use the language that the taking must be with intent to steal, it does say that robbery is the "fraudulent and violent taking of money, goods, or chattels from the person of another by force or intimidation, without the consent of the owner." The use of the word fraudulent in the statute implies an intent to steal: *Rutherford* v. *State,* 183 *Ga.* 301 (188 S. E. 442). An intent to steal is a substantive element of robbery. There can be no robbery without an intent to steal. *Sledge* v. *State,* 99 *Ga.* 684 (26 S. E. 756); *Blackshear* v. *State,* 20 *Ga. App.* 87 (92 S. E. 547). The words "with intent to steal," as used in the statute, mean wrongfully and without the consent of the owner to appropriate the property taken to the taker's own use. *Holland* v. *State,* 8 *Ga. App.* 202 (supra). If the animus furandi is lacking in the taking, there can be no robbery. So our courts have held the taking of property under a fair claim of right of title or possession does not constitute robbery. In *Long.* v. *State,* 12 *Ga.* 293, 320, this court said: "It is true, too, that if a party, bona fide believing that property in the personal possession of another belongs to him, *take that property,* and none other, away from him, with menaces and violence, it is not robbery, and it will be for the jury to say whether the party acted under such bona fide belief. So, if in this case the defendant bona fide believing that the buggy wheels in the personal possession of Braswell belonged to him, had taken them alone by threats and violence, he would not have been guilty of robbery. *Russell on Crimes,* 1 *vol.* 871, 872; 3 C. and P. 400. He did not take the buggy wheels, but other and far more valuable property; so that

a question of this sort does not arise." Also, in *Gant* v. *State,* 115 *Ga.* 205, this court held: "In the trial of one accused of robbery it is not error to charge that if two persons play and bet at cards, and the loser wrongfully, fraudulently, and by force and violence compels the winner to surrender to the loser the money won, this is not robbery; but that if the winner is at the same time and in the same manner compelled to surrender not only his winnings but also some of his individual money, then the loser would be guilty of robbery." The effect of these decisions on the question at issue is, that, to justify a taking of property by force or intimidation, the party taking must be the owner of the specific property taken or be entitled to its possession, or in good faith believe that he is the owner or entitled to its possession.

In order to be a robbery there must be a larceny, an intent to steal. One can not ordinarily be guilty of stealing his own property. The rule has been stated as follows: "If one in good faith takes the property of another, believing it to be legally his own, or that he has a legal right to its possession, he is not guilty of larceny." 36 C. J. 764, § 105. And, "If one in good faith takes the property of another, believing it to be his own or that he has a right to its possession, though his claim is unfounded, he is not guilty of larceny, because there is no felonious intent to deprive another of his property." 18 Am. & Eng. Enc. L. (2d ed.) 523. Our courts, in a long line of decisions, have held that the taking of property under a fair claim of right does not constitute larceny. *Causey* v. *State,* 79 *Ga.* 564 (5 S. E. 121, 11 Am. St. R. 447); *Lee* v. *State,* 102 *Ga.* 221 (29 S. E. 264); *James* v. *State,* 114 *Ga.* 96 (39 S. E. 946); *Smith* v. *State,* 11 *Ga. App.* 385 (75 S. E. 447); *Musgrove* v. *State,* 5 *Ga. App.* 467 (63 S. E. 538); *Brown* v. *State,* 51 *Ga. App.* 52 (179 S. E. 594). Other cases might be cited. Some courts have extended the rule that the taking of property under a fair claim of right does not constitute a larceny as applicable to one who takes money or property of another, without his consent, to apply to the payment of a debt. The wiser principle on this point seems to be as stated in 36 C. J. 764, § 106: "The fact that a person is indebted to another does not give the creditor a right to seize the debtor's property in payment of the debt; and such a seizure, if made with intent to appropriate the property to the taker's own use, is therefore larceny." And in 18

Am. & Eng. Enc. L. 524, "The claim under which the party acts must be a claim of ownership or right to possession of the specific thing. It has accordingly been held that it is larceny to take money or other property with intent to appropriate it to the payment of a debt due the taker from the owner, unless the act was done in the belief that the owner of the thing taken was willing that it should be applied to the payment of the debt." In support of this rule the following cases are cited: Com. v. Stebbins, 8 Gray (Mass.), 492; Gettinger v. State, 13 Neb. 308 (14 N. W. 403); People v. Solomon, 42 N. Y. Supp. 573; Lancaster v. State, 3 Cold. (Tenn.) 339 (91 Am. D. 288); State v. Williams, 95 Mo. 247 (8 S. W. 217, 6 Am. St. R. 46). See also People v. Ranney, 123 Cal. App. 403 (11 Pac. (2d) 405), in which the Court of California held that an "assistant manager had no right to help himself to funds of a corporation, even to pay an acknowledged debt to him." Our Court of Appeals in *McKenzie* v. *State, 8 Ga. App.* 124 (68 S. E. 622), in affirming a conviction for larceny after trust (Judge Russell, now our Chief Justice, rendering the opinion), laid down the rule: "One can not collect a debt due him by taking the property of another in payment thereof without the owner's consent."

The courts of other jurisdictions are out of harmony on the question whether one may justify a violent taking of money or property without the consent of the owner to apply to debt. Some of them, under the rule that it is not robbery to take property under a fair claim of right, have held such rule applicable to one who, though with force or intimidation, takes money or property from the person of another, without the consent of the owner, to apply to a debt; such holding being on the theory that when one takes money to apply to a debt the element of fraud, the intent to steal, in the taking is lacking. In such ruling they overlook the consideration that the true meaning of the statute declaring that "Robbery is the wrongful, fraudulent, and violent taking of money, goods, or chattels from the person of another by force or intimidation, without the consent of the owner," is the taking, without authority of law, of such property by force or intimidation from the person of another, without the consent of the owner, with intent to convert same to the use of the taker, and that such taking is fraudulent. This ruling also overlooks the fact that the creditor has no title or right of possession of the money or property of the

debtor. The better authority seems to be that the taking of money or property from the person of another by force or intimidation, without the consent of the owner, to apply to the payment of a debt due to the taker, would constitute the offense of robbery. In Thomas v. State, 165 Miss. 897 (148 So. 225), it was held that where the witness killed the defendant's dog, and the defendant by using a gun compelled the witness to turn over cattle as damages, the defendant was guilty of robbery, and that the court was not called on to decide whether the collection by force or intimidation of a liquidated debt constituted robbery. Such point was not involved; but the court said: "This is more than a simple trespass, and it will be a dangerous doctrine to hold that a man can thus collect his debts." The Criminal Court of Appeals of Texas, in Fannin v. State, 51 Tex. Cr. 41 (100 S. W. 916, 10 L. R. A. (N. S.) 744, 123 Am. St. R. 874), ruled: "At any rate, we are not willing to lay down the proposition that if a man collects a debt by force and threats, and putting in fear, he will not be guilty of robbery. There might be peculiar facts and circumstances which would exonerate him, and which the jury might consider in mitigation of the punishment; but no man has a right, as we understand the law, to take the law in his own hands, and, at the point of a six-shooter, putting his debtor in fear of his life or serious bodily injury, collect a debt, however just, and then defend against it on the ground that the property was not fraudulently taken because appellant owed him the money and would not pay him." This decision has since been overruled in Barton v. State, 88 Tex. Cr. 368 (227 S. W. 217, 13 A. L. R. 147), and has since been stripped of its judicial support for the rule; yet the wisdom of its ruling and the intrinsic force of its argument remain. The position taken in the Fannin case is strongly endorsed in a note in 135 American State Reports, 487, where, in discussing robbery and the Fannin case, the editor said: "But, assuming even that he [the defendant] had taken only the eight dollars to which he was entitled, an accord with the principle that such was his right would land us just a couple of thousand years back. There would be no longer need for courts of justice. Every creditor would carry his court of appeal in his hip-pocket! And if the demand of one's debt at the point of a gun is not robbery, what is it? Is the lawless condition which would follow to be remedied by saying, 'It is

not robbery but trespass'? Another look at the position assumed is to show how far from any point it can be reduced ad absurdum. A man has a sum of money on his person, and is stopped by two or more of his creditors, each of whom levels a revolver at him, and demands payment of his claim. If he hasn't enough for all, it would be as perfectly consistent to charge him with giving a fraudulent preference to the one who first took his money vi et armis as to say that such taking is not robbery. Suppose that the money he carried was not his own at all, but trust money, it would be just as much 'Alice in Wonderland' nonsense to say equity would follow it with a Gatling gun."

However, the Court of Appeals of this State, in *Holland* v. *State*, supra, has already decided the question. That decision is not binding authority on this court, but it is strongly persuasive. In affirming the judgment the Court of Appeals approved a charge of the court to the jury, that if the defendant by intimidation forced the prosecutor to pay him for the killing of his dog, such would be robbery. The facts of the case were: White killed a dog belonging to Holland, who by intimidation compelled White to pay him ten dollars for the dog. On the trial under indictment for robbery growing out of so taking the money, counsel for Holland requested the court to charge the jury, "that, to constitute robbery, there must have been an intention on the part of the defendant to steal, and that if the ten dollars was accepted by the defendant on a bona fide claim of right, in payment of a debt which he claimed the prosecutor owed him, he would not be guilty." The judge after giving the charge requested, added the following instruction: "I charge you that, provided that you do not find that he (the prosecutor) paid it over by intimidation," and followed this by saying: "The words 'with intent to steal' mean, to wrongfully appropriate to their own use; and if they by intimidation, forced him, or he, from intimidation, paid over the money and they took it, intending to use it or keep it, then they would be guilty." The Court of Appeals held that the trial court did not err in these additional instructions. We approve of this decision. The rule that taking property under a fair claim of right does not constitute larceny can not properly be so extended as to absolve one who by force or intimidation takes from the person of another money or property to which the taker claims no title or right of possession,

but only seeks to justify such taking on the ground that the person from whom the same is taken is indebted to him, and that the money or property is so taken to apply to the debt. To hold that one with a demand, real or imaginary, against another might lawfully justify the forcible taking of the money or property of another to satisfy the demand would not only be a dangerous rule, but such holding would be against the policy of the law. Under our State constitution "All government, of right, originates with the people, is founded upon their will only, and is instituted solely for the good of the whole." Code, § 2-101. "Protection to person and property is the paramount duty of government, and shall be impartial and complete." § 2-102. "No person shall be deprived of life, liberty, or property, except by due process of law." § 2-103. "No person shall be deprived of the right to prosecute or defend his own cause in any of the courts of this State, in person, by attorney, or both." § 2-104. Such holding would deny the citizen the full protection of the law, and permit depriving him of his property without due process of law. The law, which is the established rule of conduct for every person, so that each may in an orderly and peaceable way enjoy life, liberty, and the pursuit of happiness, protects the citizen in the peace of his habitation, in the security of his life and liberty, and in the enjoyment of his property. Without the protection of the law no man's life, liberty, habitation, or property would be secure against robbers, burglars, thieves, and those who would wrong him. It is the law that takes care of him and his own in his absence, while he sleeps, or pursues the even tenor of his way. The law not only affords the citizen such protection, but it provides a means through the processes of the courts whereby those with a difference who may not amicably settle may, without resort to force, litigate, arbitrate, and adjust their complaints and redress their wrongs. The law is humane. One may lawfully defend his person, habitation or property, but his real and practical protection and defense is that given him by the law. The law prescribes the rule of conduct, commands obedience, frowns upon disobedience. Vengeance is mine sayeth the law. While it justifies self-defense, and self-defense means prevention, it does not favor the taking of the law in one's own hand. It does not permit one to resort to violence, save in defense of person, habitation, or property. It would not be wise to permit

the citizen to use violence to redress his wrongs. What right has any one to take the law in his own hands, and in order to enforce his demands to commit serious acts of violence and disturbance of the peace against another or his property or habitation, and then, when apprehended, to appeal to the law to acquit him of his wrong? Is it not the saner rule of law to let every one high or low, rich or poor, weak or strong, be alike amenable to the law?

The law is also enacted that the people may dwell together in unity and peace. Where will it lead to hold that one who claims a debt against another may without his consent take from him his money or property by force or intimidation and not be guilty of robbery? Then the creditor may enter the home of the debtor in the darkness of the night after the family has fallen asleep, awake them, and in their frightened presence order the head of the family at the point of a gun to "stick 'em up," and under such circumstances take his money, watch, bed, furniture, clothing, or other valuables to satisfy the debt; or the creditor may meet his debtor on the street who may be carrying or be in the possession of money or property of another person, and with force or intimidation take any or all of the money to apply to his debt; or the creditor with a claim for one hundred thousand dollars or other large sum, for damages on account of some act of an employee of the bank, may enter the bank and at the point of a gun compel its cashier to open its vaults and turn over all the funds of its depositors to pay the demand; or one may claim damages for injuries by a railroad or other corporation and to satisfy the same compel with force and intimidation its officers to settle; or the creditor may meet the debtor with his family in his automobile, traveling the highway, and violently force them out of the car, take it to pay his debt, and drive away, leaving them to hitchhike their way the best they may; or the wife of a small debtor may under the law have his little property exempted from the payment of the debt, and the creditor be unable to lawfully reach it, and yet the creditor can defeat the law by taking the property with force or intimidation to apply to the debt;—any or all of such or similar acts of violence the creditor may employ to collect his debt or claim, and then not be guilty of robbery. If such be held to be the law, then the natural and only recourse of the debtor in his home or elsewhere would not be the protection of the law but would be to arm,

and when attacked to resort to greater force than that employed by the creditor. If the creditor be held justifiable as against the charge of robbery who by force takes the money or property from the person of another without the owner's consent to apply to a debt, then the question arises, would the debtor have any lawful right to defend himself or his property or his home against such violent taking? Whether the debtor would be accorded the right to resist such taking or not, his disposition would be to defend against it. It may be easily seen that such would lead to disregard for law, to fraud, and to all manner of violence. The law favors the creditor in the collection of his debts, but by no stretch of the law can it give him, without trial, title or the right to possession of the property of the debtor. Debt is a hard master and often gets its subjects in serious and difficult situations; yet it does not alone transfer to the creditor the title or right of possession of the property of the debtor. The debtor is entitled, under the law, to hold his property against the creditor until it is subjected to his debt by due process of law. The reason the courts will not adjudge one guilty of robbery who takes property under a bona fide claim of right of title or possession to the specific property taken is because of the use of the word "fraudulent" in the statute defining robbery. The word fraudulent, as hereinbefore stated, is construed to mean with intent to steal; and one ordinarily can not steal his own property. But such holding does not imply that even such taking is justified or favored by the law. The individual injured and angered is one-sided and prone to violence. It is not safe to commit the administration of justice to his hands. The law affords machinery to recover property wrongfully withheld. To let one enforce his own rights, and to use force to recover his own property, or violence to collect his debts, means substituting for the orderly processes of the law the rule of the machine-gun, sawed-off shotguns, pistols, knives, sandbags, bludgeons, and other weapons accompanied by violence and a disturbance of the peace, which is both dangerous and unwise, has no place among civilized men, and is not approved by law.

Wherefore we hold the violent taking of money or property from the person of another by force or intimidation, without the consent of the owner, for the purpose of converting the same to the use of the taker for the payment of a demand claimed to be due him by

one from whom the money or property is so taken, constitutes the offense of robbery. And that he can not under such circumstances justify the taking and be excused of the offense of robbery on the ground that the person from whom the money or property was so taken was indebted to him, and that the taking was to pay the debt. This holding is, with one exception (*Crawford* v. *State*, 90 *Ga.* 701, supra), in harmony with the decisions of this court, the Court of Appeals, and with the better-considered authority of other jurisdictions. In so far as the decision in the *Crawford* case is in conflict with the holding herein, the same is obiter dictum. From an examination of the record in that case it appears that Crawford was tried and convicted of murder. He made a motion for new trial, which was overruled. It appeared from the evidence that while the defendant was driving his wagon along the highway, the deceased drove up behind him in a buggy, whipping his horse and holloaing, and upon being asked by another person present whether he was drunk, and what was the matter with him, answered, "No, by G—d, I am not drunk; Warren [the defendant] treated me wrong in town." The defendant and the deceased quarrelled for awhile, but finally desisted; and then they got to a certain point in the road, where the deceased stopped, one of the party proposed to the defendant that he should drive on ahead so the deceased would not catch up with them, and they did so; but the deceased soon overtook them, jumped out of his buggy, ran around to the front of the defendant's wagon, calling to him, "G—d— it, stop your mules and take my things out," and caught hold of the lines and stopped the mules himself. The "things" referred to by the deceased were articles he had hired the defendant to carry for him in the wagon. The defendant handed them to him, and after putting them down the deceased stepped to the wagon and took out a piece of meat weighing several pounds, which belonged to the defendant, and threw it on the ground with his own things. The defendant said, "By G— what does that mean?" The deceased replied that he was going to have a quarter's worth of meat, and that the defendant owed him a quarter. The defendant said he did not have the money then, but would pay it when they reached his house if the deceased would wait until they got there. One of the party said he would pay the money for the defendant, but the deceased refused to wait or take the money offered him, and insisted that

he was going to take enough of the defendant's meat to pay himself. The defendant begged him not to do so, saying that he had to carry it home to live on, and that if the deceased persisted in taking it he would hurt him. The deceased paid no attention to the protests of the defendant, but began cutting the meat. The defendant attempted repeatedly to snatch the meat away from him or to push him from it, but each time he attempted to do so the deceased "raked" or cut at him with his knife, and began again to cut the meat. After the defendant's last attempt to get the meat away from the deceased in this manner had proved unsuccessful, he stepped back and picked up a fence-rail lying near, about ten feet long, and as thick as a man's arm, and, when the deceased had nearly finished cutting off a piece of the meat, struck at him sidewise, hitting him on the head and knocking him away from the meat. He then threw down the rail, picked up the meat and put it back in the wagon, and went on his way. The blow cut the skin and made a wound about two inches long on the head of the deceased, but it did not appear that the skull was broken. From this wound he died the next day.

One of the theories of the defendant Crawford was that the deceased was robbing him of his meat, and that the killing was done to prevent the robbery. On this question the court charged the jury: "It would be justifiable homicide to kill another to prevent a robbery being committed upon the person doing the killing, but it must appear that such killing was absolutely necessary to prevent such robbery and was done before such robbery was committed. After the possession of the property has been changed from the owner to the robber's, the robbery is complete. After the robbery has already been committed it would not be justifiable homicide in order to get back the property." Also: "Robbery is the wrongful, fraudulent, and violent taking of the personal goods and chattels from the person of another by force or intimidation, without the consent of the owner. To constitute robbery a necessary element is the intent to steal the property; that is, to take it wrongfully and fraudulently. Another element of robbery is, the taking must be accompanied by force or intimidation, used against the person of the one from whom it is taken and against his consent." Also: "The mere force of moving the property is not the force contemplated by the law, but it must be force or intimidation directed

against the body or person of one from whom it is taken, and not merely directed to the lifting or moving or taking and carrying away of the property. That is, the owner must be, by the very act of the taking of the property, put in bodily fear, or have force used upon his person. Even the wrongful and fraudulent taking of personal property without force or intimidation directed towards the person of the one from whom it is taken is not robbery." In his motion for new trial the defendant excepted to this charge, not on the ground that it was not abstractly correct, but on the ground that under the evidence it was too narrow and too much restricted defendant's right of self-defense on the theory of robbery, in that the court instructed the jury by such charge that if the property had changed possession from the defendant to the deceased and was not on the body of the defendant at the time of the killing, then there could be no defense against the robbery. So it may be seen that the only assignment of error necessary for the court to have decided the case, in so far as the question at hand was concerned, was whether or not under the evidence as to the change of possession of the property the charge too much restricted the defendant's right to defend himself against a robbery. This court sustained the contention, but went further in discussing the case, and stated: "To constitute robbery, there must be force or intimidation, asportation without the consent of the owner, and an intent to steal. It is unnecessary that the taking shall be directly from the person of the owner; it is sufficient if it is done in his presence, against his will, by violence or putting him in fear. *Clements* v. *State*, 84 *Ga.* 660 [11 S. E. 505], 20 Am. St. R. 385; 2 Bish. Cr. L. (8 ed.) § 1178. It was contended on the part of the State that in this case the trespass could not have amounted to a robbery, because the taking was under a claim of right, with the purpose of applying the property taken to the payment of a debt from the defendant to the deceased. It is true such a taking, although wrongful and violent, would not be robbery if the claim of right was in good faith, and if the taking was for no other purpose than to satisfy the claim; in such case the animus furandi would be lacking." This statement in the opinion was no doubt provoked by the contention of the State that the defendant was indebted to the deceased, and that the deceased had a right to take the meat to apply to the payment of the debt. Nevertheless, under the as-

signment of error, the statement was unnecessary to decide the case. It falls within the rule that a statement in an opinion unnecessary to decide the case is obiter dictum and not binding as a precedent. *Broach* v. *Smith,* 75 *Ga.* 159; *Weed* v. *Knorr,* 77 *Ga.* 636 (1 S. E. 167); *Sanford* v. *Sanford,* 58 *Ga.* 259; *Woolfolk* v. *State,* 81 *Ga.* 551 (8 S. E. 724). Be this as it may, we are requested to question, review, and overrule the decision in the *Crawford* case. Now, upon consideration of the same, the decision in the *Crawford* case is formally questioned and reviewed; and in so far as same may be in conflict with the decision herein rendered, it is hereby reversed and overruled.

■ The first inquiry contained in the third question of the Court of Appeals, "Can the passage of a rule of practice by the judges of the superior courts . . be classified as the exercise of a 'judicial power' under art. 6, sec. 1, par. 1, of the constitution of this State," is answered in the negative. We construe this question to refer to a rule adopted by the judges of the superior courts in convention, and not to be an inquiry as to the power of the superior courts to make rules of practice for the proper functioning of the superior courts. Since the Court of Appeals requested the instruction, this court, in *Jones* v. *Boykin,* 185 *Ga.* 606 (196 S. E. 900), held that the judges in convention were not authorized as superior courts to make rules or pass orders, but were authorized to act as a convention of judges. Under this decision we hold that the power of the judges of the superior courts to make the rule in convention can not be classified, under the constitution, as the exercise of a judicial power.

■ Having answered in the negative the first inquiry contained in the third question of the Court of Appeals, we do not consider, under the form of the remaining questions, that the Court of Appeals desires instruction on the second inquiry contained in the third question, or instruction on the fourth question. It appearing from these questions that the Court of Appeals desired further instruction only in event we answered that the passage of the rule of practice by the judges of the superior courts in convention could be classified as the exercise of a judicial power under the constitution, and we having answered this question in the negative, no instruction upon the remaining question is required.

Counsel for the defendant in error contends in his brief that the

act of the legislature of 1937, repealing the rules adopted by the judges in convention, is unconstitutional. The Court of Appeals in its questions does not request instruction on this contention. So we do not pass on the constitutionality of the act. This court will not undertake to give the Court of Appeals instruction on any question not requested by that court. *Georgian Co.* v. *Jones,* 154 *Ga.* 762 (115 S. E. 490).

*Atkinson, P. J., and Bell, Hutcheson, Jenkins, Grice, and Graham, JJ., concur.*