# CHARLESTON.

STATE v. FLANAGAN.

Decided April 21, 1900.

1. INDICTMENT—*Joinder of Offenses.*
    An indictment may allege both burglary and larceny in the same count, and may join two counts,—one for "breaking and entering," and another for "entering without breaking." (p. 117).

2. TRIAL—*Evidence—Motion to Exclude.*
    In the trial of an indictment, when the prosecuting attorney has introduced all his evidence and rests the State's case, on a motion by the defendant to exclude the evidence from the jury, as not being sufficient to sustain the indictment against him, if it clearly appear that the evidence is so insufficient, such motion should be sustained. (p. 120).

Error to Circuit Court, Randolph County.

John C. Flanagan was convicted of burglary and larceny, and brings error.

*Reversed.*

A. B. PARSONS, E. A. CUNNINGHAM, and J. P. SCOTT, for plaintiff in error.

ATTY.-GEN. EDGAR P. RUCKER and LUTHER C. ANDERSON, for the State.

McWhorter, President:

John C. Flannagan was indicted in the circuit court of Randolph County for unlawfully, feloniously, and burglariously breaking and entering the milk house of E. E. Hedrick, in said county, with intent the goods of him, the said Hedrick, therein being, feloniously and burglariously to take, steal, and carry away, which said milk house was then and there a building other than a dwelling house or out house adjoining thereto or occupied therewith, and did feloniously and burglariously then and there steal, take, and carry away five gallons of jam, of the value of seven dollars and fifty cents, three gallons of apple butter, of the value of three dollars, three gallons of jelly, of the value of six dollars, one ham of meat, of the value of three dollars, two dozen glass jars of blackberries, of the value of six dollars, and one bucket, of the value of fifty cents, in the whole amounting to the value of twenty-six dollars, of the goods and property of E. E. Hedrick, in the said building then being found, against the peace and dignity of the State. A second count is to the same effect except that the allegation is that said Flanagan "did unlawfully, feloniously, and burglariously enter, without breaking, the said milk house of him, the said E. E. Hedrick, in said county situate, with intent the property of him, the said E. E. Hedrick, therein being, then and there, feloniously and burglariously, to steal, take, and carry away," etc., as in the first count. The defendant demurred to the indictment, and to each count thereof, which demurrer was overruled; and the defendant then moved the court to require the prosecuting attorney to elect as to which of said counts in said indictment he would try the prisoner on,—the prisoner contending that each count charged a separate offense,—which motion was also overruled, to which rulings of the court defendant excepted; and the defendant pleaded not guilty; and a jury was impaneled, and, upon the evidence adduced, returned a verdict of "guilty as charged in the above indictment." The defendant moved the court to set aside the verdict and grant him a new trial on the ground that the same is contrary to the law and the evidence, and also moved in arrest of judgment, of which motions the court took time to consider; and on the 17th of October, 1899, the court overruled said several motions, and refused to grant a new trial, and pronounced judgment upon said

verdict, and sentenced the defendant to the term of three years in the penitentiary. Defendant took six bills of exceptions, numbered one, two, three, four, five, and six, respectively, which were signed and sealed by the judge, and made a part of the record. Defendant obtained a writ of error, alleging several errors: That it was error to overrule the demurrer to the indictment and to each count, in that it failed to inform the defendant of the actual law under which the indictment was found,—one count charging that he broke and entered the milk house, and the other that he entered without breaking,—and that, after the demurrer was overruled, the court erred in not requiring the prosecuting attorney to elect under which count he would try the defendant; contending that if the indictment was found under section 13, chapter 145, Code, the second count was bad, in alleging that the entering was burglarious. One count charged the breaking and entering; the other, the entering without breaking. Both counts charged that it was done feloniously, and the crime charged is of the same character in each count, and it is not misjoinder to include the second count with the first in the indictment. The use of the word "burglariously" will be regarded as surplusage. The evident intention of the prosecutor was to prosecute the defendant for the larceny of the goods, as the breaking and entering are charged to have been done with intent to commit larceny, and actual larceny charged. *State* v. *McClung,* 35 W. Va. 280, (13 S. E. 654); *Anthony* v. *Com.,* 88 Va. 847, (14 S. E. 834). "It is common practice, and not contrary to rule anywhere, to join counts, all of which are for felony, in one indictment." Bish. Cr. Prac. s. 449. In *Dowdy* v. *Com.,* 9 Grat. 727, Judge Moncure says: "I know of no case in which the several counts of an indictment were all for the same offense, and were in themselves good counts, when the indictment has been quashed, or the prosecutor compelled to elect on which of them he would proceed. * * * It is everyday practice to charge a felony in different ways in several counts, for the purpose of meeting the evidence as it may come out upon the trial. Each of the counts purports to be for a separate and distinct offense, and the jury very frequently find a general verdict on all the counts, although only one offense is proved." *State* v. *Shores,* 31 W. Va. 491, (7 S. E. 413), (Syl., point 3). In *Hausenfluck* v. *Com.,* 85 Va. 702, (8 S. E. 683), it is held: "One count charged the seduction to have been com-

mitted on a certain day. The other count charged the same offense to have been committed on a different day. The trial court refused to compel prosecution to elect between the counts. Held, the indictment was good upon demurrer, and it was not error to refuse to compel an election between the counts." The indictment is sufficient, and the demurrer was properly overruled.

The other assignments of error, as well as the bills of exceptions numbers one, two, three, and four, relate to what is claimed to be the admission of improper evidence over the objections of defendant, and are comprehended in and covered by assignment number five, based on bill of exceptions number five, viz. that the court erred in overruling "defendant's motion to exclude the evidence of the State when the case was rested by the prosecuting attorney,—the evidence being wholly insufficient to sustain a verdict of guilty beyond a reasonable doubt,"—which assignment, and the sixth, which is based on bill of exceptions number six, that it was error to overrule defendant's motion to set aside the verdict and grant him a new trial because it was contrary to the law and the evidence, are the only assignments and bills of exceptions that I deem it necessary to discuss, and they will be considered together.

It is shown by the evidence : That in the fall of 1897 Mary J. Hedrick, wife of E. E. Hedrick, put up some thirty cans of fruit, and some jelly and berries, with the help of her children, who picked the berries; she furnishing the sugar. That in the March following, Mr. and Mrs. Hedrick having some domestic trouble, she left home and went to Maryland. Mrs. Hedrick arranged with defendant to get the fruit and stuff she had put up, and ship it to her. She wrote a note to her daughter Maggie to let defendant have the goods. Defendant came for the goods in the absence of Mr. Hedrick, and in the night. He went to the kitchen door and saw Maggie, who told him the milk house was open. Maggie had a key to the milk house, and her brother had a key, also. The brother locked the milk house, and Maggie unlocked it. Witness M. V. Bennett says: He had a talk with defendant, and told him Hedrick told witness he was going to Franklin, the county seat of Pendleton, and defendant remarked, "That is what I wanted to find out," or what he wanted to know. Then, later in the evening (witness thinks, at Adam Roy's house, where he was going to stay all night), defendant

said he was going away, and would be back there some time that night. He came back, and came into the room where witness was in bed, and he had a sack, with something in it, on his shoulders. Went around the foot of the bed and set it down, and went upstairs to bed. Thinks it was between eleven and twelve o'clock. He left the sack at the foot of the bed. Witness saw it there next morning. Didn't know what was in it. Adam Roy says defendant ate his supper at his house, went away, and came back in the night. Couldn't tell what time. Did not know he was back until next morning, did not see him bring anything. Saw some canned fruits, airtight blackberries, and some other things, in a box, but could not tell what they were. Defendant boxed the goods and shipped them. Did not recollect where. Did not see who the goods were shipped to. E. E. Hedrick testifies: That when he returned from Franklin, on the 8th of April, he missed all the blackberries, jam, jellies, and canned fruits, and some meat,—all the meat he had in the spring house. Everything in the spring house was gone when he came home. Said he had made a safe on one side of the spring house, on the inside, and made a door to it,—a kind of press in the corner of the spring house,—and he had the stuff in that safe. Said his wife had gone some ten days before that time. This witness admits that his feelings towards the defendant were not good,—that he was "very angry with him." While defendant went for the goods in the night, it clearly appears that he did not go for the purpose of stealing the goods, but to get them away without a difficulty, if possible, with Mr. Hedrick. He went to the house, and the daughter informed him how to get them for her mother, who honestly thought the goods belonged to her. After he had taken the goods away, he made no effort to conceal them. He took them from the box in which he had carried them away, and boxed them up and shipped them. "If a wife carry away and convert to her own use her husband's goods, it is no larceny at common law, as husband and wife are but one person; and if a person merely assist a married woman, who has not committed, or intended to commit, adultery, in carrying away the goods of her husband, without the knowledge or consent of the latter, though with intent to deprive the latter of his property, he cannot be convicted of stealing the goods." 1 Whart. Cr. Law, s. 918. And in Hale, P. C. 561: "That although the breaking and

entering be charged to be done burglariously, yet if the intention of that entering be either laid in the indictment, or appears upon the evidence, to be the intent only to commit a trespass, and not a felony, it is no burglary; but it must be laid and proved to be with intent to steal or to kill, or to commit some other felony, for, though the killing or murder may be the consequence of beating, yet, if the primary intention were not to kill, the intention of beating will not make burglary." The attorney general relies on section 1600, Whart. Cr. Law (4th Ed.), where it is said the intent may be inferred from the facts, and that the prisoner actually committed a felony after he had entered the house is satisfactory evidence, and almost conclusive, that the intent with which he broke the house was to commit that felony; showing that the act of breaking or entering, to make it burglary, must be accompanied with or prompted by the intent to commit a felony; and where it is further said, "The very fact of a man's breaking and entering a dwelling house in the nighttime is strong presumptive evidence that he did so with the intent to steal." In *State* v. *Cross.* 42 W. Va. 253, (24 S. E. 996), (Syl., point 3), it is held, "It is the duty of the State to allege and prove criminal intent, and if, from the whole evidence, the jury have a reasonable doubt as to whether such intent existed, they should acquit the prisoner." In *State* v. *Ziegler,* 40 W. Va. 593, (21 S. E. 763), it is held that "when a court which tries a cause certifies all the evidence adduced on the trial, and from the evidence so certified it clearly appears that it was wholly insufficient to sustain the verdict, this Court will set aside the verdict, and, in a proper case, award a new trial." Under the circumstances of this case, if the defendant in good faith believed that the goods with the larceny of which he is charged were the property of Mary J. Hedrick, he did not enter the milk house with the intent to steal the goods, and therefore could not be convicted of the charge. From the whole evidence in the case, as shown in the record, the proof of the intent to steal the goods as charged in the indictment is not sufficient to sustain the charge, and, when defendant moved to exclude the State's evidence when the prosecutor rested the State's case, the motion should have been sustained. The judgment will be reversed, the verdict set aside, and a new trial awarded.

*Reversed.*