# CHARLESTON

## STATE *v.* BAILEY.

Submitted February 18, 1908.    Decided February 25, 1908.

1. LARCENY—*Indictment—Description of Stolen Property—Sufficiency.*

It is not necessary to the sufficiency of an indictment, charging larceny, to describe the stolen articles by reference to any mark of identification by which they can be distinguished from others of the same, or a similar, kind. (p. 672.)

2. SAME—*Taking—Under Claim of Right.*

If a person take property of another under an honest belief of right in himself to do so, he is not guilty of larceny thereof, even though he took it with knowledge of the adverse claim of such other person, and his own claim ultimately prove to be untenable. (p. 672.)

3. SAME—*Question for Jury.*

Whether a claim of right under which property has been so taken was *bona fide* or only pretended is generally a question of fact for the jury. (p. 672.)

4. SAME.

Facts and circumstances indicating lack of confidence in the claim of right under which property has been taken and carried away,

and determination to defeat the adverse claim by putting the property beyond the reach of legal process, such as concealment, disposition or destruction thereof, tend to prove lack of good faith on the part of the taker.  (p. 672.)

5.  CRIMINAL LAW—*Parties to Offenses.*

There can be no crime without a perpetrator, nor an accessory without a principal.  (p. 673.)

6.  SAME—*Principals in First Degree—Commission of Offense by Innocent Agent—'Principal.'*

If a person with felonious intent, through the instrumentality of an innocent agent, cause a crime to be committed, he, and not the agent, is the principal, and is punishable accordingly, although he was not present at the time and place of the offense either actually or constructively, within the meaning of the law of aider and abettor, operative between principal and accessory before the fact.  As between him and the innocent agent, there is no such relation.  He alone is the guilty party.  (p. 673.)

7.  SAME—*Prosecution of Principals and Accessories.*

Under such circumstances, an exception to the rules applicable to principals and accessories, in the trial of criminal cases, arises *ex necessitate legis.*  (p. 673.)

8.  SAME—*Accessories Before the Fact.*

If the actor, the person who performs the manual act incident to the crime, had felonious intent in the performance thereof, or knew the act was criminal, he is a principal in the first degree; and the person at whose instigation he acted is either a co-principal in the first degree or a principal in the second degree, if he was actually or constructively present, but, if not present in either sense, he is an accessory before the fact.  (pp. 673, 674.)

9.  SAME—*Question for Jury.*

On the trial of one charged with having committed a crime through the instrumentality of an innocent agent, the guilt or innocence of the latter is a question for the jury, if there is evidence tending to prove criminal intent on his part.  (p. 675.)

10.  SAME—*Instructions—Misleading.*

In such case, instructions to the jury, which, by reason of generality and indefiniteness, warrant the finding of guilt in both parties are misleading and improper.  (p. 676.)

Error to Circuit Court, Mingo County.

Halsey Bailey was convicted of larceny, and he brings error.

*Reversed.  Remanded.*

STROTHER, TAYLOR & FLANAGAN and MARCUM & MARCUM, for plaintiff in error.

CLARKE W. MAY, Attorney General, for the State.

POFFENBARGER, PRESIDENT:

On his writ of error to a judgment of the circuit court of Mingo county, imposing upon him a sentence of two years imprisonment, for the larceny of four barrels of whiskey, Halsey Bailey assigns, as error, among other things, the overruling of his demurrer to the indictment, founded upon the lack of averment therein of any mark or number on the barrels by which they could be distinguished from others of the same or similar kind. The objection is not tenable. Under *State* v. *Huff*, 31 W. Va. 355, the indictment is good. It charges the larceny of "four barrels of whiskey of the value of $300.00 of the goods and chattels of Sig Freiberg and Sol H. Freiberg." The case cited held it sufficient to charge the larceny of "one keg of wine of the value of $15.00 of the goods and chattels of J. W. Hale." See also Bishop's New Crim. Pro., Vol. 11, section 700.

The prisoner was jointly indicated with three other persons, G. G. Mabe, Joe Staley and Everett Atkinson, but, on his election, was tried separately. Practically all of the other assignments of error, relating to the admission and rejection of evidence, instructions to the jury, given and refused, and the motion to set aside the verdict, depend upon the legal principle applicable to the facts proven and to the establishment of which the evidence tends. In other words, if, from the facts, the jury could properly have inferred that the prisoner was a principal in the first or second degree, some of the rulings complained of are correct, and others wrong; but, if, as matter of law, he was only an accessory before the fact, the rulings are all wrong and the evidence does not sustain the verdict.

The following material facts might be found from the evidence: Sig and Sol H. Freiberg had thirty barrels of whiskey in the bonded warehouse of the Tug River Distilling Company at Williamson, Mingo county, on which they had paid the internal revenue tax at the rate of $1.10 per gallon, and four of which were hauled away by one James Blackburn, an employee of the Mingo Light and Ice Company, by direction of White Atkinson, one of the proprietors of that concern, pursuant to a request of the prisoner that he take them into his possession and care. At that time, the distilling company was in the hands of a receiver, and there was a

controversy, between the receiver and the Freibergs, concerning the title of the property or the right of the latter to remove it. The prisoner was the president of the distilling company and, as such, was interested in the controversy. Blackburn left one of the barrels at a saloon owned by one Frank Meeks and took the others to a pop factory adjoining the Mingo Light & Ice Company plant, both of which concerns were owned and controlled by said Atkinson and his two brothers, Everett and George, and the team with which he hauled the whiskey away belonged to the Mingo Light & Ice Company. Meeks bought the barrel of liquor, left at his place, from Everett Atkinson at the price of $45.00, but, on discovering that it was claimed by the Freibergs, he refrained from opening or using it. Part of the other three barrels was consumed while in the pop factory by the employees of the Mingo Light & Ice Company and others, and the balance was shipped to Bluefied. The prisoner was not present at the time it was taken away, but was either at Huntington, about 100 miles distant, or on the road to that place. However, he does not deny having directed Atkinson to take it and he virtually admitted his knowledge of its whereabouts when the officers were searching for it. This admission, however, was coupled with the statement that he thought it belonged to him, and, if he found that it did not, he would return it. While at Huntington or on his way to that place, he did nothing concerning the property taken, nor did he, at any time, have any of it in his actual possession or aid in the removal of it from the distillery. The purpose of his visit to Huntington was the settlement of a claim he had against somebody at that place, and which had no connection whatever with the stolen property. He did not sustain toward Atkinson or Blackburn, the relation of employer or master in any sense nor were the Atkinsons interested in the distilling company. Having learned that Staley, the storekeeper and gauger, at the distillery, intended to stamp and set out the whiskey, he told Atkinson to go down and get it and look after it.

The circumstances shown tended to prove that the claim of title or right to possession on the part of those who took away the whiskey was not *bona fide.* The concealment of its whereabouts after it had been removed evinced guilty

intent. It signified a determination to defeat the claim of the Freibergs, not by the establishment of superior title, but by putting out of reach of the process of the courts, the subject matter of the controversy. Such conduct was in the nature of an admission of knowledge that the claim was groundless and untenable. If a person in good faith take the property of another believing it to be his own, he is not guilty of larceny, even though his claim turn out ultimately to have been unfounded, because of lack of intent on his part to deprive another of his property. This is so notwithstanding knowledge of the adverse claim at the time. *State* v. *Flanagan*, 48 W. Va. 115, 120; 18 Am. & Eng. Ency. Law 523, 524. In *State* v. *Flanagan*, a wife, claiming title to certain fruit deposited in her husband's cellar, instigated a third -party to get possession of it and ship it to her without the knowledge of her husband. He did so, under the belief that it belonged to the wife, and, on prosecution for the larceny thereof, this Court held the evidence would not sustain a verdict of guilty. But the claim of title must be asserted in good faith. It must be more than a mere colorable pretense to obtain possession, and whether it was set up in good faith is usually a question for the jury. *State* v. *Caddle*, 35 W. Va. 73, 78; *Baras* v. *State*, 41 Tex. 527; *Thompson* v. *State*, 43 Tex. 268; 18 Am. & Eng. Ency. Law 524.

Since the jury could have found a larceny of the whiskey, and also, that some of the parties above named were guilty, they were bound to determine which of them was the principal; for there can be no crime without a perpetrator nor an accessory without a principal. If Atkinson and Blackburn, the parties who actually took the whiskey, had no criminal intention in doing so, and took it by direction, or at the instance, of another party, such other party is, *ex necessitate legis*, the principal, though he was not present at the time and place of the taking either actually or constructively. The law does not justify or excuse an act which makes the intentional perpetrator thereof guilty of a felony, by denying or withholding remedy for the vindication of the peace and dignity of the state, by reason of the peculiar circumstances under which, or the means by which, it was accomplished. If the party who actually did the act was innocent of intentional wrong, and the act on his part was by procure-

ment of another, it imputes the criminal intent to that other and makes him the guilty party, although he was not in any sense an accomplice, co-conspirator, or aider or abettor of the actor. The relation of the parties to one another and to the act is such as to create an exception to the general rules of law respecting principals and accessories. If the circumstances show that the crime has been committed and the actor was innocent of intention to do wrong, he is treated as a mere instrument or agency in the hands of him who procured or induced his act. He is neither principal nor accessory, nor guilty of any crime or offense. From necessity, therefore, the other party must be the perpetrator of the crime, no matter where he was. Bish. New Crim. Law, section 310 says: "The doctrines of this sub-title explain how it is that the books speak of the crimes being committed through an 'innocent agent.' Such an agent is one who does the forbidden thing moved by another person, yet incurs no legal guilt because either not endowed with mental capacity or not knowing the inculpating facts." At section 649, the same author says: "There may be more principals than one, but there must be at least one. Consequently a man from whose sole and unaided will comes a criminal transaction is principal, whatever physical agencies he employes, and whether he is present or absent when the thing is done." At section 651, he says: "Since there must always be a principal, one is such who does the criminal thing through an innocent agent while personally absent. For example, when a dose of poison, or an animate object like a human being, with or without general accountability, but not criminal in the particular instance, inflicts death or other injury in the absence of him whose will set the force in motion, there being no one but the latter whom the law can punish, it of necessity fixes upon him as the doer. But if the agent employed incurs guilt, then the employer is simply an accessory before the fact." A good illustration is found in *Gregory* v. *State*, 20 O. St. 510, (20 Am. R. 774.) Gregory had induced Bevis's daughter to sign her father's name to a promissory note, by false pretenses and representations which led her to believe that she had authority to do so, and the court held that the evidence warranted the jury in finding the daughter innocent of wrong intention and the defendant, Gregory, guilty of forgery. In

that instance, the defendant was present when the criminal act was done, but did not participate in it otherwise than by requesting the signing of the note and representing authority in the daughter to sign it. But, in *Adams* v. *The People*, 1 Comst. (N. Y.) 173, a resident of Ohio obtained money from a firm in New York by causing certain fraudulent and fictitious receipts to be exhibited to it by a third party. The receipt was drawn and signed in Ohio and the offense committed in the City of New York, through the instrumentality of an innocent agent, who obtained the money for his principal by presenting the fictitious receipt, under the belief that they were genuine. The agent was innocent and his principal was held guilty, although the offense was committed in New York and he was, at the time, in the state of Ohio. The same principal was applied in *Regina* v. *Bannen*, 1 C. & K. 295, in which the defendant had procured a diesinker to make dies with which shillings could be counterfitted, by representing to him that they were for use in whist clubs. In *Regina* v. *Bleasdale*, 2 C. & K. 765, the defendant was convicted of the larceny of coal from the premises of other persons, which, by his direction, his servants and agents had severed and carried away, and the syllabus in that case declares as follows: "If a man does, by means of an innocent agent, an act which amounts to a felony, the employer, and not the agent, is accountable for that act." In *Regina* v. *Clifford*, 2 C. & K. 202, an innocent agent, at the request of the prisoner, had written "William Smart" to a receipt on a postoffice money order, believing he had authority to do so. Platt, Baron, said: "We agree in thinking, that, as Bartlett was an innocent agent, the signing the name William Smart by him is just the same as if it had been signed by the prisoner himself, and that it is therefore a forgery." The law relating to this subject is comprehensively stated in Sharwood's Blk. Comm., Book IV., p. 33, as follows: "In case of murder by poisoning, a man may be a principal felon by preparing and laying the poison, or persuading another to drink it who is ignorant of its poisonous quality, or giving it to him for that purpose, and yet not administer it himself, nor be present when the very deed of poisoning is committed. And the same reasoning will hold with regard to other murders committed in the absence of

the murderer by means which he had prepared beforehand, and which probably could not fail of their mischievous effect. As by laying a trap or pitfall for another, whereby he is killed, letting out a wild beast, with an intent to do mischief, or exciting a madman to commit murder, so that death there-upon ensues; in every one of these cases the party offending is guilty of murder as a principal in the first degree."

The evidence leaves the case dark and incomplete as to the connection or relationship of these parties. What motive the Atkinsons had for guilty participation is not disclosed, and yet the circumstances tend to prove intention on their part to appropriate this property to their own use. Meeks testifies to having purchased one barrel of the whiskey from Everett Atkinson, a partner or business associate of White Atkinson, to whom the prisoner gave the direction to take possession of the property. The other three barrels were deposited on premises under the control of the Atkinsons, and employes of these parties, together with others, consumed a part of it, and, after the indictment had been found, the residue was shipped away to Bluefield, West Virginia, at whose instance or by whose direction, the record does not disclose. It does not appear that the prisoner gave any direction whatever except to take possession of the property and look after it. These facts called upon the jury to say whether the Atkinsons and Blackburn were felons or mere innocent agents of the prisoner, and, if guilty, they or some of them were the principals and the prisoner only an accessory. Since he was not present either actually or constructively, provided the real actor was guilty of offense, he must be regarded as an accessory before the fact. He did nothing but advise or direct the taking of the property. Nothing further is established except his admission of knowledge of the whereabouts of the property. These acts are not sufficient to make him a principal in the second degree. If there was another person who was principal in the first degree, the prisoner could have been nothing more than an accessory before the fact. If the Atkinsons took the property with felonious intent, they were principals in the first degree. They did not with their own hands remove the property, it is true, but Blackburn, the teamster, may have been an innocent agent in their hands. If so, and they had criminal

intent in what they did, they, or some of them, are principals in the first degree. If Blackburn, on the other hand, the teamster, was cognizant of the facts and knew the Atkinsons had no right to take the property, and that they had feloni- ·ous design in causing him to take it, and they did not in any way aid in the actual taking, then he was the principal. The prisoner denies that he ever received in any way benefit from the property or participated in the disposition made of it, and there is no evidence that he did. On the contrary, it appears that the Atkinsons did derive benefit from it and make the disposition of it.

In view of this evidence tending to show actual guilt on the part of persons other than the prisoner, the absent instigator of the taking, the court could not, by any instruction given, preclude inquiry by the jury as to their guilt or innocence, with- out injury to the prisoner. It may be insufficient to warrant the court in saying, as matter of law, the latter was an accessory before the fact and not a principal, but it was amply suffi- cient to call for the deliberation and action of the jury upon the hypothesis of guilt in those who did the actual taking or some of them, and consequent innocence of the prisoner as a principal. It becomes necessary, therefore, to ascertain whether the action of the trial court in giving and refusing instructions was in accord with the principles here stated.

The State's instruction No. 1 is clearly bad. It told the jury the prisoner was guilty, if he had "by himself, or through the agency of some other person or persons, fraudulently" taken and carried away the property. It ignored the requi- site of innocence on the part of the agent. Its instruction No. 2 was, to say the least, misleading for it proceeds upon the hypothesis of possession of the property by the prisoner and felonious conversion thereof to his own use, in the absence of evidence tending to prove actual possession; and does not propound the theory of constructive possession by means of an innocent agent. Its instruction No. 3 is too general and indefinite in saying felonious intent could be shown by the testimony of witnesses or inferred from all the facts and circumstances of the case. The principles applicable under the peculiar circumstances of this case rendered it necessary to make the instructions specific and clear. The jury could not safely deal with it under instructions calculated to confuse

or mislead them by reason of the generality of the terms, though, under other conditions, such generality might be unobjectionable and harmless. The fiction of actual presence, dependent upon the innocence of the agent, an element not often involved in criminal trials, cannot be ignored in any instruction declaring the law upon the entire evidence in this case.

Defendant's instruction No. 4 was properly refused. Its object is not very clear. In fact, it is almost unintelligible. It sought exoneration of the prisoner on the ground of his guilty knowledge of the taking of the property and his derivation of benefit therefrom. His instruction No. 6 was improperly refused. It propounded the theory of a taking under belief in good faith that the property was not that of the Freibergs, but that of the Tug River Distilling Company. In the refusal of instruction No. 7, in the form in which it had been requested, and the giving thereof as modified by the court, there was no error. As requested, it would have told the jury the prisoner could not be convicted, unless they found there had been a felonious taking of the property from the possession of the Freibergs. The court modified it by inserting the words "actual or constructive" before the word "possession." In its original form, it might have been misleading, since the property was not in the actual possession of the Freibergs. Their constructive possession was sufficient to make the taking a trespass, a necessary element of common law larceny.

For the reasons stated, the judgment will be reversed, the verdict set aside and the case remanded for a new trial.

*Reversed.    Remanded.*