STATE OF WEST VIRGINIA

*v.*

LAWSON JORDAN CUTLIP, *et al.*

(No. 10004)

Submitted January 21, 1948. Decided February 17, 1948.

*A. E. Cooper,* for plaintiff in error.

*Ira J. Partlow,* Attorney General, and *J. Chandler Curd,* Assistant Attorney General, for defendant in error.

LOVINS, JUDGE:

A grand jury of Pocahontas County returned an indictment charging Lawson Jordan Cutlip, Vesper Ray

Cutlip, Birdie Nancy Dean, and Charles Alexander with burglary, breaking and entering and larceny. The first count of the indictment charges that defendants broke and entered an outhouse adjoining a dwelling house owned by The Chesapeake and Ohio Railway Company, and occupied by Parker Curry. The second count of the indictment charges defendants with breaking and entering an outbuilding not adjoining said dwelling house. Each count charges that defendants did commit larceny of three pork hams and a pork shoulder of the aggregate value of $51.82.

Lawson Jordan Cutlip pleaded guilty to the indictment; Charles Alexander elected to be tried separately and was acquitted; and Birdie Nancy Dean and Vesper Ray Cutlip were tried jointly. The joint trial of Birdie Nancy Dean and Vesper Ray Cutlip resulted in a verdict of not guilty, directed by the court, as to Birdie Nancy Dean, and a verdict of guilty of grand larceny as to Vesper Ray Cutlip. Motions in arrest of judgment and to set aside the verdict having been overruled, the prosecuting attorney filed an information alleging that Vesper Ray Cutlip had been twice before convicted in the United States of crimes punishable by confinement in a penitentiary. It being admitted that he was the same person who had been convicted as indicated in the information, the court sentenced Vesper Ray Cutlip to confinement in the penitentiary of this State for life. To review that judgment, this writ of error was granted.

Vesper Ray Cutlip, hereinafter referred to as "defendant", in company with the other persons jointly indicted with him, went to the home of Parker Curry, located in the Town of Durbin on the 3rd day of April, 1947. The purpose of their visit was to obtain some clothes left there by Birdie Nancy Dean, who theretofore had been employed by Curry as a domestic.

It is not clear how long they stayed there at that time, but there is no dispute that some time after their arrival, the four defendants, together with Parker Curry and his daughter, drove to the Town of Cass, where they bought

several bottles of whiskey. Thereupon they returned to the Curry home, and remained there, drinking with Curry and his daughter, until about nine or ten o'clock p. m., when the four defendants left the Curry home. The four defendants then went to the home of Birdie Nancy Dean's sister, where they remained all night.

On the morning following the visit of defendants, Parker Curry and his daughter found that the meat house had been broken into and that three hams and one shoulder had been stolen therefrom. They testified in detail relative to tracks found in and around the outbuilding, which appeared to be imprints made by a man and a woman. The Currys further testified that they then went to Marlinton, where they saw defendants riding by in an automobile, but that they did not talk with them. While in Marlinton, Parker Curry procured warrants for the arrest of the defendants. It is further shown that Parker Curry, in the investigation which followed, recovered two of the hams and the shoulder.

On the morning following their visit at the Curry home, the four defendants again started out in the automobile, and went to the store of Clyde Baxter, where Lawson Jordan Cutlip negotiated a sale of two of the hams and the shoulder to Baxter for the sum of $35.94. According to the testimony of the wife of Baxter, who handled the transaction, Lawson Jordan Cutlip owed an account at the store amounting to $5.13, and he was given credit for that amount on the sale price of the meat. The remainder was paid to him as follows: eighty-one cents in cash and a thirty-dollar check. During the course of the transaction between Lawson Jordan Cutlip and Mrs. Baxter, defendant entered the store, where he and Lawson Jordon Cutlip engaged in a conversation, the purport of which was that Lawson would lend defendant one-half of the money derived from the sale of the meat, amounting to $17.97, to pay the expenses of a trip to Bluefield contemplated by defendant. No division of the money was made at the Baxter store, and, according to the testimony showing that transaction, Vesper Ray Cutlip had no connection with handling the meat at the store, or receiving

the proceeds of the sale thereof other than the conversation noted above.

Later the four defendants went to a beer establishment, where an attendant cashed the thirty-dollar check which Lawson Jordan Cutlip had received from Mrs. Baxter. The attendant stated that he put the money on the counter; that about that time defendant came to the counter and asked for his part of the money; and that he was under the impression that Lawson Jordan Cutlip divided the thirty dollars with the defendant, although he did not know how much money the defendant received.

Thereafter, on the same morning, a member of the Department of Public Safety arrested defendant, Birdie Nancy Dean and Lawson Jordan Cutlip. Alexander was arrested about six o'clock p. m. on the same day.

A written statement was made by Birdie Nancy Dean, which indicated that she knew of the theft of the meat, and that Alexander and Lawson Jordan Cutlip had put the meat in the trunk of the automobile driven by Alexander. She further stated therein that defendant had collected the money for the sale of the meat at Baxter's store, of which Lawson Jordan Cutlip had received $12.00. Upon the trial of Birdie Nancy Dean and defendant, this statement was admitted in evidence. After the admission thereof, the court admonished the jury that it was not evidence against the defendant, but was evidence against Birdie Nancy Dean and against her alone. At the close of the evidence the court again admonished the jury that the statement made by Birdie Nancy Dean should not be considered as any evidence whatever against the defendant.

When the State ended its case in chief, defendant moved the court to strike the evidence and direct a verdict of not guilty as to him, which was overruled. The court, however, sustained a similar motion made in behalf of Birdie Nancy Dean. At the close of all the evidence, defendant made another motion to direct a verdict

of not guilty, which was likewise overruled. After the verdict was returned, defendant moved the court in arrest of judgment, and to set aside the verdict, which motions were overruled. Thereupon defendant was sentenced as hereinbefore stated.

The first count of the indictment, as stated above, charges the offense of burglary, as defined by Code, 61-3-11, which is punishable by confinement in the penitentiary for not less than one nor more than fifteen years. The second count of the indictment charges an offense, commonly called breaking and entering, which is a felony and is punishable by confinement in the penitentiary for not less than one nor more than ten years. Code, 61-3-12. Defendant complains that the joining of such counts in an indictment constitutes a fatal misjoiner of offenses, and that the State, at the inception of the trial, should have been compelled to elect on which count she relied for conviction.

A similar question was before this Court in the case of *State* v. *Shores,* 31 W. Va. 491, 7 S. E. 413. It was there held that where charges of the same general character are inserted as separate counts in an indictment, manifestly for the purpose of meeting the different phases of the evidence, the indictment should not be quashed, nor should the prosecutor be required to elect on which count he would proceed. See *State* v. *Shelton,* 78 W. Va. 1, 88 S. E. 454; *State* v. *Ringer,* 84 W. Va. 546, 100 S. E. 413; *State* v. *Larue,* 98 W. Va. 677, 686, 128 S. E. 116; I Wharton's Criminal Procedure, Third Edition, Section 341. Furthermore, an indictment may allege both burglary, or breaking and entering, and larceny in the same count. *State* v. *Flanagan,* 48 W. Va. 115, 35 S. E. 862; I Wharton's Criminal Procedure, Third Edition, Sections 293 and 489.

However, defendant complains on the hypothesis that had the jury returned a general verdict of guilty to the indictment, the court would not have been advised as to what sentence could be pronounced, the first count calling for a punishment of one to fifteen years and the second count calling for punishment of one to ten years.

We do not think this position is tenable, as the court certainly has discretion to amend a verdict in accordance with the finding of the jury. In any event before the verdict is received and the jury discharged, the trial court may, for good reason, cause the jury to retire to its room and further consider of its verdict. *State* v. *Cobbs*, 40 W. Va. 718, 22 S. E. 310. See *Yonker* v. *Grimm*, 101 W. Va. 711, 133 S. E. 695. Thus, even under defendant's hypothesis, the trial court could, and no doubt would, have required the jury to designate in its verdict which of the offenses the defendant had committed.

Defendant contends that the statement made by his co-defendant, Birdie Nancy Dean, should not have been admitted, or at least the court, in instructing the jury, should have given the jury a written instruction to disregard it as to him. The statement made by Birdie Nancy Dean was not a part of the *res gestae*, and was not made in the presence of defendant. It was, therefore, not admissible as evidence against defendant. *State* v. *Spurr*, 100 W. Va. 121, 130 S. E. 81. Although such statement was not admissible as evidence against defendant, it was admissible as evidence against Birdie Nancy Dean, his co-defendant, and it is the duty of the court to so instruct the jury. *State* v. *McCoy*, 61 W. Va. 258, 57 S. E. 294. The trial court was extremely careful to instruct the jury upon the admission of the statement of Birdie Nancy Dean, as well as at the close of the case, that it was not evidence against defendant. In the third point of the syllabus in *State* v. *Hill*, 52 W. Va. 296, 42 S. E. 160, this Court held that instances may occur wherein a strong impression has been made upon the minds of the jury by improper testimony, and that subsequent withdrawal thereof will not remove the effect caused thereby. We do not think this case comes within the exception set forth in the *Hill* case. Furthermore, it was proper for the trial court to orally instruct the jury to disregard the statement as any evidence against defendant. Code, 56-6-22.

Defendant contends that the State did not prove that the crime was committed in Pocahontas County. The evi-

dence shows that the dwelling house of Parker Curry is in Durbin, Pocahontas County, and that the outbuilding used as a meat house was between forty-five and fifty feet from the house. Defendant argues that it is entirely possible that the boundary line of Pocahontas County might be located between the residence of Parker Curry and the meat house used by him, and that proof of the venue should be more clear and specific. Of course, it is necessary to allege and prove that the crime charged in the indictment was committed within the jurisdiction of the trial court, but it is unnecessary that the proof of venue be direct. It may be inferential, if otherwise sufficient. *State* v. *Hobbs,* 37 W. Va. 812, 17 S. E. 380. See *State* v. *Poindexter,* 23 W. Va. 805, 813; *State* v. *Alderson,* 74 W. Va. 732, 82 S. E. 1021. In the case of *State* v. *McDonie,* 89 W. Va. 185, 109 S. E. 710, this Court took judicial notice of the fact that the City of Huntington is in Cabell County, and is the county seat thereof, for the purpose of establishing venue, although it is to be noted that at this time Huntington is partly located in Wayne County. In the case of *State* v. *Stephenson,* 114 W. Va. 458, 172 S. E. 533, this Court held that where a person whom the defendant was charged with killing was last seen alive in the county and her body was thereafter found therein, venue in such county was sufficiently established. Based on the authority of the cases cited above, the majority of this Court is of the opinion that the facts proved in this case are sufficient to establish venue in Pocahontas County.

Defendant argues that the court committed error in orally instructing the jury relating to the crime of grand larceny and grounds such assignment of error on "Bill of Exceptions No. 4", the pertinent portion of which reads as follows: "* * * after the argument of counsel and the instructions of the court had been given, the Court at the time of informing the jury of the verdicts possible in the case, orally instructed them; as to the crime of grand larceny, to which action of the court the defendant at the time excepted." By Code, 56-6-19, instructions to the jury, as well as the charge by the court,

must be written and submitted to counsel, even though the court may "instruct the jury orally concerning matters not proper for their consideration or concerning the conduct of any person in connection with the trial." Code, 56-6-22. This Court, in considering these statutes, has uniformly held that Code, 56-6-19, is mandatory. *Henderson v. Kessel, et als.*, 93 W. Va. 60, 116 S. E. 68. See *State v. Clark*, 64 W. Va. 625, 644, 63 S. E. 402. It is error to give, over the objection of the accused, an oral instruction concerning any material matter. *State v. Murphy*, 93 W. Va. 477, 117 S. E. 147. This Court has also held that such rule of practice must be strictly followed. *State v. Willey*, 97 W. Va. 253, 261, 125 S. E. 83; *Henderson v. Kessel, et als., supra; State v. Noble*, 96 W. Va. 432, 123 S. E. 237; *State v. Warwick*, 96 W. Va. 722, 123 S. E. 799. Notwithstanding the strictness with which that statute has been applied, this Court held in the case of *State v. Buford Williams*, 95 W. Va. 218, 120 S. E. 594, that where the parties united in asking the court to give an oral instruction, which was given without objection, neither party could complain, because the instruction was not in writing. See *State v. Patko*, 97 W. Va. 298, 306, 125 S. E. 95. Further, this Court has held that a court could orally answer questions of the jury relative to the number and kinds of verdicts a jury could find under an indictment and the evidence, together with the punishments attending such verdicts. *State v. Skinner*, 101 W. Va. 632, 133 S. E. 371; *State v. Munsey*, 102 W. Va. 462, 135 S. E. 594. In the recent case of *Raines v. Faulkner*, 131 W. Va. 10, 48 S. E. 2nd 393, decided October 21, 1947, the subject of oral instructions is fully discussed.

But in the instant case the bill of exceptions does not show sufficient facts to indicate whether the trial court committed error when measured by the principles announced in the above cited cases. We cannot say from the facts recited in the "Bill of Exceptions No. 4" that the court committed error. It is to be presumed that the court is familiar with and followed the law in regard to oral instructions. But we can, as we did in the *Raines*

case, point to the pitfalls attending the giving of oral instructions as being a fruitful source of error.

Defendant grounds an assignment of error upon the fact that the prosecuting attorney during the progress of the trial propounded a question to defendant, to the effect that Lawson Jordon Cutlip had agreed to plead guilty to the charge of larceny of the meat so that the other defendants could be acquitted. An objection was sustained to that question, but in the argument to the jury the prosecuting attorney stated that Lawson Jordan Cutlip had pleaded guilty to the indictment in order to save the others. This argument was objected to, and the objection was overruled. We do not believe it good practice on the part of counsel to argue on evidence which has been excluded from the consideration of the jury by the court's ruling. Nevertheless, in the circumstances of this particular case, we fail to see where defendant suffered any real prejudice from the action of the court in overruling the objection to the prosecuting attorney's argument.

The sufficiency of the evidence to support the conviction is challenged by three motions as hereinbefore indicated. We have carefully appraised the evidence relating to defendant's connection with the crime charged in the indictment. The evidence is entirely circumstantial, relating to the alleged conversation between defendant and his brother with reference to a loan of money at the time the meat was weighed and sold at Baxter's store. The other item of evidence which tends to connect defendant with the crime is the testimony of the person who was in attendance at the beer establishment where the check was cashed. That witness said: "I believe they divided the money upon the counter", adding that he thought defendant asked for part of the money. Defendant attempts to explain these two incidents by testifying that he was attempting to borrow money at the Baxter store, and that in the beer establishment he procured, out of Lawson Jordan Cutlip's money, change for a ten-dollar bill. These explanations may or may not be true, but appraising the evidence and giving it full force

and effect, without regard to the explanation of defendant, we do not believe that the testimony, being circumstantial, excludes every hypothesis except the guilt of defendant. *State* v. *Beall,* 98 W. Va. 189, 126 S. E. 569; *State* v. *Hudson,* 128 W. Va. 655, 37 S. E. 2d 553.

We think the evidence introduced by the State is insufficient to connect defendant with the crime. True, he was at the Curry home when the crime was committed, but whether he went to the meat house or not, the evidence of the State is most uncertain and indefinite. And whether he got any part of the proceeds of the sale of the stolen meat is likewise uncertain and indefinite. The evidence, though it does cast suspicion of guilt on defendant, does not come up to the high degree of proof necessary to show defendant's guilt beyond all reasonable doubt. See *State* v. *White,* 66 W. Va. 45, 66 S. E. 20.

On the ground that the evidence is insufficient to sustain the verdict, we reverse the judgment, set aside the verdict, and award defendant a new trial.

Judge Fox is of the opinion that the evidence was sufficient to sustain the verdict, and, accordingly, would affirm the judgment.

> *Judgment reversed; verdict set aside; new trial awarded.*