295 S.E.2d 46

**STATE of West Virginia**

v.

**Willie WINSTON.**

**No. 15251.**

Supreme Court of Appeals of West Virginia.

July 15, 1982.

Rehearing Denied Sept. 16, 1982.

556

Franklin D. Cleckley, Morgantown, P. Lee Clay, Robert F. Cohen, Jr., Fairmont, for appellant.

Chauncey H. Browning, Atty. Gen. and Gregory W. Bailey, Deputy Atty. Gen., Charleston, for appellee.

MILLER, Chief Justice:

In this criminal appeal from a sixty-year sentence for aggravated or armed robbery,[1] the defendant contends that his vehicle was subject to an illegal search. He maintains that he had a bona fide claim of right to regain the property taken and that the trial court gave erroneous instructions on the law in this area. He also contends the trial court erred in failing to give him a short postponement during the trial to procure a subpoenaed witness to bolster his bona fide defense claim. Finally, he claims that the trial court's sentence of sixty years was disproportionate under *State v. Houston*, 166 W.Va. 202, 273 S.E.2d 375 (1980). We find no error except as to the last point and, therefore, remand for a sentencing hearing.

On February 11, 1980, the defendant robbed at gun point Harold Hohmann, the operator of a coin shop in Fairmont. He handcuffed Hohmann and proceeded to take Hohmann's wallet and a large number of coins. As he left Hohmann's shop, the defendant was pursued by Mrs. Hohmann. She managed to get a good look at the defendant and his vehicle, and gave a description of him and the vehicle, including a partial license number, to the police. The police broadcast the descriptions to various law enforcement units in the area with the additional information that the defendant was believed to be traveling north on I-79 in the direction of Morgantown.

As he was proceeding north on I-79 toward Morgantown the defendant was observed by State Trooper J. T. Brammer, who had heard the broadcasts regarding the robbery.[2] Trooper Brammer gave chase and the defendant failed to pull over. Instead, he continued to travel toward Morgantown at a high rate of speed; he was clocked at over 90 miles per hour. Finally, Trooper Brammer stopped the defendant and placed him under arrest. After the defendant was arrested, Trooper Brammer seized and removed a revolver and a briefcase from defendant's truck. As he was removing the briefcase, he opened it and looked inside. It contained Mr. Hohmann's wallet which had $2915 in cash and the coins removed from the coin shop whose

1. In *State v. Harless*, 168 W.Va. 707, 285 S.E.2d 461 (1981), we suggested use of the term "aggravated robbery" in lieu of "armed" because it more accurately reflected the wording of our robbery statute, W. Va. Code, 61-2-12. We use the term "aggravated robbery" in this opinion.

2. The description given by Mrs. Hohmann and broadcast by the police was: A Black male wearing a blue jacket, driving a black Ford pickup truck with numerous dents and a partial West Virginia license number 7R.....

value was not established in the record.[3]

Subsequently, the defendant was indicted and tried for robbery. During his trial, the defendant did not deny that he had handcuffed Hohmann or that he had removed items from Hohmann's shop. Instead, he took the position that he had taken the property under a "bona fide claim of right." Specifically he testified that sometime prior to the incident he and Hohmann had entered into an agreement whereby Hohmann had agreed to pay him a commission for locating customers willing to sell coins. He further testified that on February 7, 1980, he had received 500 silver dollars from one William Bland of Morgantown who had instructed him to sell them to Hohmann. According to the defendant, he had taken the coins to Hohmann on February 8, 1980, and Hohmann had agreed to pay him $7750 at a later time. The defendant testified that on several subsequent occasions Hohmann had refused to pay, and consequently he had decided to take matters into his own hands and on February 11, 1980, he had committed the acts leading to his arrest.

On appeal, the defendant's first assignment of error is that the trial court erred in admitting into evidence items contained in the briefcase. He argues that the items were obtained as the result of an illegal search and seizure. In support of his position he cites Syllabus Point 2 of *State v. Tomey*, 163 W.Va. 578, 259 S.E.2d 16 (1979), where we discussed the validity of the warrantless search of luggage found in the passenger compartment of an automobile:

"Absent exigent circumstances, a search of luggage must be both reasonable and performed pursuant to a properly issued search warrant, and the mere reasonableness of a search, assessed in the light of surrounding circumstances, is not a substitute for the judicial warrant required under the Fourth Amendment."

We based this conclusion on the decisions of the United States Supreme Court in *Arkansas v. Sanders*, 442 U.S. 753, 99 S.Ct. 2586, 61 L.Ed.2d 235 (1979), and *United States v. Chadwick*, 433 U.S. 1, 97 S.Ct. 2476, 53 L.Ed.2d 538 (1977), in which the Court held that a search warrant is required before police officers may open closed containers which they have lawfully seized at the time of the arrest of the owner, where there is probable cause to believe that they contain contraband.

After our decision in *State v. Tomey, supra*, the United States Supreme Court, in *New York v. Belton*, 453 U.S. 454, 101 S.Ct. 2860, 69 L.Ed.2d 768 (1981), restated its position regarding the search of closed containers located in the passenger compartment of a vehicle by stating:

"[W]e hold that when a policeman has made a lawful custodial arrest of the occupant of an automobile, he may, as a contemporaneous incident of that arrest search the passenger compartment of that automobile.

"It follows from this conclusion that the police may also examine the contents of any containers found within the passenger compartment, for if the passenger compartment is within reach of the arrestee, so also will any containers in it be within his reach." 453 U.S. at 460, 101 S.Ct. at 2864, 69 L.Ed.2d at 775.

In note 4 of *Belton, supra*, the following statement was made:

" 'Container' here denotes any object capable of holding another object. It thus includes closed or open glove compartments, consoles, or other receptacles located anywhere within the passenger compartment, as well as luggage, boxes, bags, clothing, and the like. Our holding encompasses only the interior of the passenger compartment of an automobile and does not encompass the trunk." 453

---

**3.** After the briefcase was taken to police headquarters a subsequent search of it was made after obtaining a warrant. The defendant correctly argues that if the first search at the scene was bad, this second search which was based on information obtained in the first search would also be invalid under the "fruit of the poisonous tree" doctrine. *Wong Sun v. United States,* 371 U.S. 471, 83 S.Ct. 407, 9 L.Ed.2d 441 (1963). We, therefore, confine our inquiry to the validity of the first search.

U.S. at 460, 101 S.Ct. at 2864, 69 L.Ed.2d at 775.

Defense counsel on appeal cites *Belton* stating it "has held that closed containers within the passenger compartment of an automobile may be searched without a warrant if the search is incident to a lawful custodial arrest." [4] (Appellant's Brief, p. 9–10) However, it is argued that once the defendant has been placed in custodial arrest, a *Belton* search is unwarranted if he is handcuffed or otherwise secured away from the inside of his vehicle. The defendant's view of *Belton* is based on the fact that *Belton* discusses *Chimel v. California*, 395 U.S. 752, 89 S.Ct. 2034, 23 L.Ed.2d 685 (1969). *Chimel* permitted a search of the person and the immediate physical area surrounding him upon his arrest. This was permitted in order to prevent destruction of evidence and to secure the officer's safety against weapons which might be used by the arrestee. However, it is clear that *Belton* specifically redefines the extent of a *Chimel* search as to automobiles:

> "Our reading of the cases suggests the generalization that articles inside the relatively narrow compass of the passenger compartment of an automobile are in fact generally, even if not inevitably, within 'the area into which an arrestee might reach in order to grab a weapon or evidentiary ite[m].' *Chimel*, 395 U.S., at 763 [89 S.Ct., at 2040]. In order to establish the workable rule this category of cases requires, we read *Chimel's* definition of the limits of the area that may be searched in light of that generalization." 453 U.S. at 460, 101 S.Ct. at 2864, 69 L.Ed.2d at 774–75.

Thus, we believe that *Belton* permits upon a lawful custodial arrest of the occupant of a motor vehicle that its entire passenger compartment including closed containers can be searched without a warrant as an incident to such arrest. We have reiterated this view in *State v. Boswell*, 170 W.Va. 433, 294 S.E.2d 287, 291 (1982), where we said:

"*Belton* in effect extended the permissible area of a warrantless search to the entire passenger compartment."

Consequently, we believe the officer's search of the defendant's briefcase was proper.

A number of the defendant's assignments of error relate to his claim that in taking Hohmann's property he was acting under a "bona fide claim of right." We have been unable to locate a West Virginia case dealing with the question of whether a "bona fide claim of right" to property taken can defeat a charge of robbery. A number of jurisdictions have adopted such a rule on the theory that the *animus furandi* or intent to steal does not exist when a person takes property under the belief that he has a bona fide claim to it. This is upon the theory that the intent to steal is an essential element of the crime of robbery.

In *State v. Harless*, 168 W.Va. 707, 285 S.E.2d 461 (1981), we discussed at some length our crime of robbery. We noted that our robbery statute, W. Va. Code, 61–2–12, does not attempt to define all of the elements of the crime of robbery which arise from the common law definition of robbery and stated in Syllabus Point 1 of *Harless*:

> "At common law, the definition of robbery was (1) the unlawful taking and carrying away, (2) of money or goods, (3) from the person of another or in his presence, (4) by force or putting him in fear, (5) with intent to steal the money or goods."

In Syllabus Point 2 of *State v. Hudson*, 157 W.Va. 939, 206 S.E.2d 415 (1974), we said:

> "Animus furandi, or the intent to steal or to feloniously deprive the owner permanently of his property, is an essential element in the crime of robbery."

The element of intent to steal for robbery is the same as for the crime of larceny. We have traditionally defined our general crime of larceny according to its common

---

**4.** The defendant does not contest the validity of the initial custodial arrest based upon probable cause. We do not address therefore the troublesome issue not answered in *Belton, supra,* as to whether an arrest for a minor traffic violation will warrant a *Belton*-type search. This issue has received little attention although one court appears to have rejected the concept. *People v. Norman,* 14 Cal.3d 929, 538 P.2d 237, 123 Cal. Rptr. 109 (1975).

law elements as we stated in Syllabus Point 3 of *State v. Louk*, 169 W.Va. 24, 285 S.E.2d 432 (1982):

> "To support a conviction for larceny at common law, it must be shown that the defendant took and carried away the personal property of another against his will and with the intent to permanently deprive him of the ownership thereof."

*See also State v. Pietranton*, 137 W.Va. 477, 72 S.E.2d 617 (1952); *State v. Voiers*, 134 W.Va. 690, 61 S.E.2d 521 (1950).

We do have several earlier cases where we have recognized that in a prosecution for larceny, the defendant may assert as a defense that he took the property under a bona fide claim of right. In *State v. Bailey*, 63 W.Va. 668, 60 S.E. 785 (1908), the defendant was the president of a distilling company which was in receivership and who directed the removal of four barrels of whiskey from a bonded warehouse. There was a conflict as to ownership of the whiskey barrels but this Court indicated that the bona fide claim of right defense could be a jury issue.

*Bailey* relied on our earlier larceny case of *State v. Flanagan*, 48 W.Va. 115, 35 S.E. 862 (1900), where a wife claiming title to certain jams and preserves located in her husband's milk house induced the defendant to obtain the property and ship it to her. Without any elaboration on the point, this Court concluded that the defendant had a bona fide belief that the goods were the property of the wife.

It is important to note that both *Bailey* and *Flanagan* involved the recovery of specific property to which the owner claimed title. In the present case, we are not confronted with a defendant who has recovered specific property to which he has a bona fide claim of ownership. Rather the transaction in this case is an attempt to recover from the victim the $7750 debt that was claimed to be owed.

Although some jurisdictions appear to recognize that a bona fide claim that a debt is due will defeat a charge of robbery, *see generally* Annot., 88 A.L.R.3d 1309 (1978), most of these jurisdictions have rather stringent limitations to such defense. The

first is that if more than the amount due is taken then the bona fide claim defense is not available. *E.g., State v. Trujillo*, 7 Or.App. 236, 489 P.2d 977 (1971); *Bass v. State*, 151 Tex.Cr.R. 172, 206 S.W.2d 599 (1947). Another limitation is that a bona fide claim of ownership cannot be asserted where the amount of the debt is unliquidated. *People v. Poindexter*, 255 Cal. App.2d 566, 63 Cal.Rptr. 332 (1967); *Williams v. State*, 317 So.2d 425 (Miss. 1975); *State v. Austin*, 60 Wash.2d 227, 373 P.2d 137 (1962).

Still other courts, and this appears to be a view increasingly accepted, hold that taking in satisfaction of a debt is not a claim of ownership to any specific property and therefore does not defeat a robbery conviction. *Moyers v. State*, 186 Ga. 446, 197 S.E. 846 (1938); *People v. Uselding*, 107 Ill.App.2d 305, 247 N.E.2d 35 (1969); *State v. Russell*, 217 Kan. 481, 536 P.2d 1392 (1975); *State v. Ortiz*, 124 N.J.Super. 189, 305 A.2d 800 (1973); *Elliott v. State*, 2 Tenn.Cr.App. 418, 454 S.W.2d 187 (1970); *Edwards v. State*, 49 Wis.2d 105, 181 N.W.2d 383 (1970); Annot., 88 A.L.R.3d 1309 (1978). The most commonly expressed rationale for this rule arises from the fact that in the debt recovery situation there is no identifiable property which is reclaimable as set out in *Edwards v. State, supra:*

> "The distinction between specific personal property and money in general is important. A debtor can owe another $150 but the $150 in the debtor's pocket is not the specific property of the creditor. One has the intention to steal when he takes money from another's possession against the possessor's consent even though he also intends to apply the stolen money to a debt. The efficacy of self-help by force to enforce a bona fide claim for money does not negate the intent to commit robbery. Can one break into a bank and take money so long as he does not take more than the balance in his savings or checking account? Under the majority rule the accused must make change to be sure he collects no more than the amount he be-

lieves is due him on the debt. A debt is a relationship and in respect to money seldom finds itself embedded in specific coins and currency of the realm. Consequently, taking money from a debtor by force to pay a debt is robbery. The creditor has no such right of appropriation and allocation." 49 Wis.2d at 113, 181 N.W.2d at 388.

The New Jersey court in *State v. Ortiz, supra,* has this to say about the current trend of allowing a bona fide claim of right to defeat a robbery prosecution where the defendant claims he is collecting on a debt:

"Moreover, in those jurisdictions which, since 1937, have had occasion to examine the question as a matter of first impression, all have rejected it—with the exception of a single federal case, decided by a divided three-judge court. *Moyers v. State,* 186 Ga. 446, 197 S.E. 846 (Sup. Ct. 1938); *People v. Uselding,* 107 Ill.App.2d 305, 247 N.E.2d 35 (App. Ct. 1969); *State v. Pierce,* 208 Kan. 19, 490 P.2d 584 (Sup. Ct. 1971); *Edwards v. State,* 49 Wis.2d 105, 181 N.W.2d 383 (Sup. Ct. 1970); *Richardson v. United States,* 131 U.S.App.D.C. 168, 403 F.2d 574 (D.C. Cir. 1968)....

"In our view, the proposition not only is lacking in sound reason and logic, but it is utterly incompatible with and has no place in an ordered and orderly society such as ours, which eschews self-help through violence. Adoption of the proposition would be but one step short of accepting lawless reprisal as an appropriate means of redressing grievances, real or fancied. We reject it out of hand." 124 N.J.Super. at 191–92, 305 A.2d 800, 801–02.

In *State v. Brighter,* 608 P.2d 855 (Hawaii 1980), the court quoted with approval from *State v. Ortiz, supra,* and went on to limit the claim of right recovery in Syllabus Point 2 to the recovery of specific property:

"In a claim of right defense to a charge of robbery, the interest which the accused asserts under a claim of right must be to specific property, and the interest claimed by him must be in complete derogation of the victim's rights in and to the property which is the subject of the alleged robbery."

We recognize, as have our earlier cases of *State v. Bailey, supra,* and *State v. Flanagan, supra,* that a defendant may assert as a defense to a robbery or larceny charge, that he had a bona fide claim of ownership to specific property stolen and, therefore, that he had no intent to steal. However, this defense is not available where the defendant took money or other property, to which he did not have a specific ownership claim, in satisfaction of a debt. Thus, the defendant in this case was as a matter of law not entitled to assert a claim of right.

With the defense of a bona fide claim of right unavailable as a matter of law, the defendant's collateral issues surrounding this claim are without merit. He asserts he was entitled to obtain discovery on the victim's books to see if the transaction was listed therein. Also he had subpoenaed Mr. Bland, the owner of the coins, but at trial Bland did not respond to the subpoena and defense counsel asked for a short postponement to ascertain his whereabouts, which the court refused. However, no error can be claimed since Bland's testimony as to his ownership of the coins was immaterial in view of the unavailability of the defendant's bona fide claim of right defense. The defendant's argument that the trial court's instruction on the bona fide defense claim was inadequate must also fall in view of our holding that he was not entitled to the defense.

Finally, the defendant asserts that the trial court erred in not permitting a sentencing hearing under *State v. Houston,* 166 W.Va. 202, 273 S.E.2d 375 (1980), where we stated in Syllabus Point 1:

" 'Article III, Section 5 of the West Virginia Constitution, which contains the cruel and unusual punishment counterpart to the Eighth Amendment of the United States Constitution, has an express statement of the proportionality principle: "Penalties shall be proportioned to the character and degree of the offence." ' Syllabus Point 8, *State v. Vance,* 164 W.Va. 216, 262 S.E.2d 423 (1980)."

*Houston* and its companion case, *State v. Leonard*, 166 W.Va. 202, 273 S.E.2d 375 (1980), involved aggravated robbery sentences of thirty and forty years. In *Houston*, we set out factors to be considered on sentencing and recognized its applicability was limited to those few crimes where our sentencing statutes give the trial court a broad leeway to set a determinate sentence, one of which is the aggravated robbery statute involved here, W. Va. Code, 61–2–12.[5] We remanded the case for development of an appropriate sentencing record in *Houston* and outlined the procedure to be used in future cases in Syllabus Point 2:

"Where the defendant desires to challenge the length of his sentence for robbery by violence, he is entitled to do so by a timely motion to the trial court made within the time period provided by W. Va. Code, 62–12–3, for suspending a sentence, and an appropriate record shall be made to provide the factual basis for the sentence."

 We believe the defendant in this case should be accorded the same right as we extended to the defendant in *Houston* which is to have a sentencing hearing and reconsideration of his sentence in light of *Houston's* guidelines. Therefore, the case is remanded for such a hearing.

Because we find no error in the trial of this case, we affirm the defendant's conviction. We do, however, remand the case for a sentencing hearing.

Affirmed in Part.

Reversed in Part.

Remanded with Directions.

---

**5.** In note 7 of *Houston, supra,* we stated:
  "Other open-ended sentencing statutes are the kidnapping statute, W. Va. Code, 61–2–14a, 61–2–14c and 61–2–14d; the bank embez-zlement statute, W. Va. Code, 61–3–20; and the crime of obstruction of railroads or canals to endanger lives, W. Va. Code, 61–3–28."